Mark A. Costantino, J.
The plaintiff alleged three causes of action in an amended pleading, the first of which was for annulment, and the others for separation on the ground of abandonment and cruel and inhuman treatment. Plaintiff also alleged that there was no issue of the marriage. The court dismissed plaintiff’s action for annulment for failure of proof. Defendant wife had interposed an answer and counter-claimed for separation. On the trial and after plaintiff’s dismissal defendant moved for leave to amend her answer to allege a counterclaim for annulment. The motion to amend was granted without objection thereto by plaintiff husband.
The believable testimony, the medical proof and other evidence in the case, including the formal admissions made on the part of the plaintiff husband, sustained defendant’s position that there had been a failure of the consummation of the marriage between the parties.
After trial defendant was granted judgment of annulment.
The evidence indicated that the parties, upon discovery of the infirmities of plaintiff, sought medical advice. As a result of such advice and plaintiff’s condition they then further consulted medically the possibility of artificially inseminating defendant wife.
Further testimony adduced at the trial revealed that the parties agreed that defendant wife would be artificially inseminated with the semen of a third-party donor. The plaintiff and defendant both signed the consent to have her artificially inseminated. Plaintiff, in addition, promised to pay all expenses involved to effect such procedure. A contract was signed by the plaintiff for waiver of liability and for medical and/or surgical treatments. These papers are in evidence and marked as exhibits.
*1085 As a result of said artificial insemination a child was born on September 14, 1961 — Minday Frances Gursky. It was conceded on the trial that the birth certificate listed Annette Gursky as the mother and Stanley Gursky as the father. In view of the issue of the legitimacy of the child raised in this litigation the statements in said certificate are neither controlling nor determinative of the parental status of the parties nor of the status of the infant.
We are now confronted with the problem of determining whether or not a child conceived by means of artificial insemination of a married woman through the use, with the husband’s consent, of semen contributed by a donor other than the husband is legitimate. For the sake of convenience this practice will also be referred to in this opinion as heterologous artificial insemination or A. I. D.
The court wishes to emphasize at the outset that however much it is concerned with arriving at a solution that is least harmful to the child, it must in the final analysis be guided by the settled concepts of the common law as modified by statutory enactment. The court is, however, aware that any literal application of the law should be grounded in reason and logic if it is to lead to a proper and just adjudication.
The concept which historically is deeply imbedded in the law is that a child who is begotten through a father who is not the mother’s husband is deemed to be illegitimate. This view is adverted to in Commissioner of Public Welfare v. Koehler (284 N. Y. 260, 264) as follows: “ In judicial opinions, judges, according to their individual tastes or whims, had used indiscriminately the terms ‘ natural child ’ or 1 child born out of wedlock ’ or ‘ bastard ’ to describe a child whose father was not the mother’s husband; and difference in the descriptive terms was not intended to carry any juridical consequences.”
The foregoing concept has been judicially deemed to have been carried over into statutory law. Thus Judge Lehman, speaking for the Court of Appeals in the Koehler case (supra) at page 264 points out that: “ The Legislature in different statutes enacted at different times has also used those terms indiscriminately to describe a child whose father is not the husband of the child’s mother and the Legislature has conferred upon the Court of Special Sessions in the City of New York, and upon other courts elsewhere, jurisdiction in proceedings to establish the paternity of such a child for the purpose of compelling the father to pay for the child’s support and education.”
Unless there can be read into the statutory enactments of this State, dealing with persons born out of wedlock, an intention *1086 to modify the settled concept as to the status of a child whose father was not married to its mother, it must be presumed that the historical concept of illegitimacy with respect to such a child remains in force and effect. Turning to the statutes of this State involving the instant question, we find that the term ‘1 a child born out of wedlock ’ ’ is deemed to be synonymous with and must be construed as meaning an “ illegitimate child ”. (General Construction Law, § 59.) A child born out of wedlock was defined in section 119 of the Domestic Relations Law (which was in effect at the time of the child’s birth) as “ a child begotten and born: (a) Out of lawful matrimony; (b) while the husband of its mother was separate from her a whole year previous to its birth; or (c) during the separation of its mother from her husband pursuant to a judgment of a competent court, ’ ’ Reason and logic impel the conclusion that the phrase “ Out of lawful matrimony ’ ’ refers not solely to the child of an unmarried woman, but also to the child of a married woman. In other words, subdivision (a) is to be deemed to refer to any child whose natural father was not married to its mother irrespective of the marital status of the mother (see State of North Dakota v. Coliton, 73 N. D. 582). (See, also, Schatkin, Disputed Paternity Proceedings [2d ed.], § 2.)
That this construction accords with the intent of the Legislature in passing the statute hereinabove referred to (Domestic Relations Law, § 119), the repeal of which went into effect on September 1, 1962, is manifest from the definition provided in section 512 of the Family Court Act, which went into effect on September 1, 1962. That section of the Family Court Act defines a child born out of wedlock as being a child begotten and born out of lawful matrimony. The comment provided by way of annotation in McKinney’s Consolidated Laws points out that the provision found in the definition contained in the Domestic Relations Law relating to the separation of the husband from the mother of the child for a period of a year previous to the birth of the child constituted proof of the fact that the child was born “ out of lawful matrimony.”
While section 112 of the New York City Sanitary Code appears to constitute a recognition of the existence of the practice of artificial insemination by setting forth measures required to be adopted by physicians engaged in the practice, such provision of law must be read within the framework of the established concept of illegitimacy as hereinabove discussed and can in no wise be deemed to sanction the practice of artificial insemination or to render legitimate any issue thereof.
*1087 The State Legislature has exercised its power to modify the concept of illegitimacy in certain respects when it has deemed it fitting to do so. Thus it has provided that the subsequent marriage of parents of an illegitimate child legitimatizes such child. (Domestic Relations Law, § 24.) The fact that it has not chosen to deal with the question of legitimacy as it relates to children begotten and born through heterologous artificial insemination must be deemed to manifest a disinclination to modify, by legislative fiat, a concept which must logically result only in a determination adverse to the legitimacy of a child begotten by a father other than the husband of the mother. Certainly, there has been increasing discussion and controversy generated on this subject sufficient to indicate that the ramifications and the myriad problems arising in this field of artificial insemination require legislative action if the historical concept of illegitimacy is to be modified so as to admit of the legitimacy of a child born through heterologous artificial insemination. Attempts have hereto been made to introduce legislation seeking in part the legitimization of A. I. D. children and such legislation has been defeated. This is another indication of a disinclination on the part of the Legislature to disturb the application of the historical concept of illegitimacy to children begotten through heterologous artificial insemination.
The question with which we are here dealing has been the subject of somewhat conflicting judicial attitudes. It appears that the only case dealing with this subject in New York State is the case of Strnad v. Strnad (190 Misc. 786 [1948]). That case appears, on surface analysis, to hold that a child which is the offspring of heterologous artificial insemination, performed with the consent of the mother’s husband, is legitimate. It must be borne in mind, however, that the precise question involved in that case was the husband’s right of visitation as respects such child. The court concluded that the husband was entitled to rights of visitation as theretofore allowed as the evidence did not show him to be an unfit guardian, but did indicate that the best interests of the child called for reasonable visitations. The view expressed by the court in that case, that such child was not an illegitimate child, is supported by no legal precedent. Indeed, the further view expressed by the court, namely, that the child is deemed to have been ‘ ‘ potentially adopted ’ ’ or ‘1 semi-adopted ’ ’ by the husband of its mother, constitutes an implicit recognition of the fact that the birth would otherwise be illegitimate. Since legal adoption can be accomplished only in accordance with the provisions of section 110 of the Domestic *1088 Eelations Law which specifically declares that no person shall be adopted except in pursuance thereof, and since in the Strnad case no legal adoption was alleged or proved, it would appear that the court’s conclusion that the child was legitimate cannot logically be sustained.
Where the precise issue of legitimacy has been squarely presented for determination, it has been held that heterologous artificial insemination by a third-party donor, with or without the consent of the husband, constitutes adultery on the part of the mother, and that a child so conceived is not a child born in wedlock and is, therefore, illegitimate (Doornbos v. Doornbos, No. 54 S. 14981 [Superior Ct., Cook County, Dec. 13, 1954]).
It is my opinion, in light of all of the foregoing considerations, that the child in the instant case, which was indisputably the offspring of artificial insemination by a third-party donor with the consent of the mother’s husband, is not the legitimate issue of the husband.
However, while the court is constrained to hold that the child of the defendant wife is not the legitimate issue of the plaintiff husband, it does not follow that the husband, is thereby free of obligation to furnish support for the child in the opinion of the court. The husband’s declarations and conduct respecting the artificial insemination of his wife by means of a third-party donor, including the husband’s written “ consent ” to the procedure, implied a promise on his part to furnish support for any offspring resulting from the insemination. This, in the light of the wife’s concurrence and submission to artificial insemination, was sufficient to constitute an implied contract. ‘ ‘ A promise will be implied where the agreement is instinct with obligation and the implication is supported by the circumstances.” (Renner v. Stanley Co., 136 Misc. 492, 493.) And “An agreement may result as a legal inference from the facts and circumstances of the case, although not formally stated in words.” (Wells v. Mann, 45 N. Y. 327, 331.)
Moreover, a reading of the document of ‘ ‘ consent ’ ’ signed by the husband clearly reveals that it constituted more than a mere acquiescence in, or approval of, or agreement to have the procedure of artificial insemination take place. The ‘ ‘ consent ’ ’ was in its terms a request to the physician to conduct the artificial insemination for the express purpose of providing a child for the mutual happiness of the parties. There is nothing in the record to indicate that the wife would have undergone artificial insemination in the absence of the husband’s consent. Hence it is reasonable to presume that she was induced so to act and thus changed her position to her detriment in *1089 reliance upon the husband’s expressed wishes. To relieve the husband of any duty of furnishing support for the child resulting from the artificial insemination of the wife, to which she submitted in reliance on her husband’s wishes, would cast a financial burden upon the wife which in equity and conscience should be borne by the husband. The circumstances properly call for invocation and application of the doctrine of equitable estoppel so as to cast upon the husband, as between husband and wife, the primary duty of support for the child here involved. It has been stated by the Court of Appeals that an estoppel “ rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury ” (Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285, 292; Lynn v. Lynn, 302 N. Y. 193, 205); and, a party may not, even innocently, mislead another and then claim the benefit of his deception (Romano v. Metropolitan Life Ins. Co., 271 N. Y. 288, 293). See, also, Triple Cities Constr. Co. v. Maryland Cas. Co. (4 N Y 2d 443, 448).
The court concludes in the instant case that the husband is liable for the support of the child here involved, whether on the basis for an implied contract to support or by reason of application of the doctrine of equitable estoppel.
The court does not pass upon any personal rights, including property rights, that the child may have vis-a-vis the plaintiff husband. (See, e.g., Miller v. Elliott, 266 App. Div. 428.)
There was testimony that plaintiff gave to defendant, for household expenses and incidentals, the sum of $80 per week prior to the birth of the child and the sum of $90 per week subsequent thereto.
Taking into consideration the financial requirements for the support of defendant and child and the ability of the plaintiff to meet this responsibility and upon all of the evidence adduced at the trial bearing thereon, the defendant wife is awarded the sum of $25 per week for her support and the sum of $20 per week for the maintenance and support of the infant.
Also presented for determination is an application, made by the wife at the start of the trial, for additional counsel fees upon which the court reserved decision. Plaintiff, in opposing the application, relied on the rule of law that no award could be made for past services in matrimonial actions. (See Beadleston v. Beadleston, 103 N. Y. 402; Ernst v. Ernst, 277 App. Div. 1045.)
In view of the issues raised by the plaintiff husband subsequent to the original award of counsel fees, I am of the opinion that the defendant is entitled to additional counsel fees; for, *1090 the original award did not contemplate the additional legal services that were required to be rendered on behalf of the defendant to pursue her action and support her defense. (See “ Dominick ” v. “ Dominick ”, 26 Misc 2d 344.)
It should be noted, moreover, that effective September 1, 1963, the restrictive provisions under the Civil Practice Act and Rules of Civil Practice will no longer prevail as to awarding of counsel fee for past and future services. Matrimonial actions and related statutes will be transferred to the Domestic Relations Law. The new section 237 provides for counsel fee at any stage regardless of the period for which legal services have been rendered. The issue posed by plaintiff husband will become academic after that date. Accordingly, counsel fee is awarded in the sum of $300.
The Special Guardian is commended for the time, effort and diligence manifested in protecting the interests of the child. He is awarded the sum of $275.
All other motions upon which the court reserved decision are denied.
The other causes of action alleged by plaintiff and defendant as hereinbefore set forth are dismissed.