IN RE the MARRIAGE OF:
L.M.S., Petitioner-Respondent,

v.

S.L.S., Respondent-Appellant.

Court of Appeals

*No. 81–267. Submitted on briefs August 17, 1981.—*
*Decided October 13, 1981.*
(Also reported in 312 N.W.2d 853.)

For the appellant the cause was submitted on the brief of *Robert F. Dopkins* of Wausau.

For the respondent the cause was submitted on the brief of *James H. Whiting* of Antigo.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.   In this divorce action, the trial court granted the wife custody of the minor child born during the marriage and ordered the husband to pay support for the child.  On appeal, the husband contends that he should not be ordered to support the child because he is not the biological father.  He argues that the "paternity agreement" is not sustained by the evidence, and, even if the agreement exists, it is not a legal basis for holding him liable to support the child.

The couple married in 1974, and a child was born during the marriage in 1977.  It is conceded by the parties that due to the husband's sterility, he is not the child's biological father.  The husband, desirous of having a child, often discussed with his wife different ways of having children.  Artificial insemination was considered but dismissed because of the required expense and travel.  Attempts at adoption proved unsuccessful.  The husband suggested that his wife become pregnant by another man and agreed to acknowledge the child as his own.  At the husband's insistence the wife agreed, had sexual intercourse with the surrogate father, and became pregnant.

When the child was born, the husband was at the hospital and permitted his name to be placed on the birth certificate as the father.  He also declared the child as a

dependent on his federal and state tax returns. In addition, when applying for Social Security disability, the husband wrote on the application that the child was his son. Until the time of the divorce, the husband held himself out to the public as the child's natural father and supported the child as his. The surrogate father complied with the terms of the agreement and never established any relationship with the child or mother. His parental rights were voluntarily terminated in another circuit court.

At trial, the wife testified that she agreed with her husband to conceive a child by having sexual relations with a surrogate father. The husband denied the agreement. The trial court, believing the wife's testimony, found that the husband had agreed to the wife's conception of a child. Based on this finding, the court concluded that, as a matter of law, the husband was obligated to pay support for the child.

On appeal, findings of fact by the trial court will not be upset unless they are against the great weight and clear preponderance of the evidence. In addition, where there is conflicting testimony, the trial court is the ultimate arbiter of the witness's credibility. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249, 274 N.W. 2d 647, 650 (1979). Accordingly, we will not disturb the trial court's factual findings.

Whether a husband who has agreed to his wife's impregnation by another man should be required to support a child born during the marriage, but not fathered by him, is a question of first impression in this court. Although there have been a number of decisions on similar questions in other jurisdictions, the results are conflicting.[1]

---

[1] For a collection of cases and discussion on this area of the law see: "Liability of mother's husband, not the father of her illegitimate child, for its support" 90 A.L.R.2d 583 (1963); "Legal Con-

As a general rule, a husband is not liable to support a child born to his wife but not procreated by him. See cases collected in Annot., 90 A.L.R.2d 583, 584 (1950). Section 52.055, Stats., dealing with failure to support, refers only to a "parent" who intentionally refuses to "provide for the necessary and adequate support of *his* child." [Emphasis supplied.]

When a husband consents to having a surrogate father impregnate his wife so that they may have a child of their marriage, several arguments are made for finding a husband's support obligation. Some states hold the husband liable for support under similar circumstances, where pregnancy resulted from artificial insemination, on an implied contract theory. In these cases, the children were labeled illegitimate, but the husband was held liable for support because of his consent. The husband's consent implied a promise to furnish support to resulting children, which, with the wife's reliance thereon, constituted a contract. *Anonymous v. Anonymous*, 41 Misc. 2d 886, 246 N.Y.S.2d 835 (Sup. Ct. 1964) ; *Gursky v. Gursky*, 39 Misc. 2d 1083, 242 N.Y.S.2d 406 (Sup. Ct. 1963).

The same conclusion could be reached on the theory of promissory estoppel. "A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." RESTATEMENT OF CONTRACTS § 90, at 110 (1932). Here it could be reasonably found that the husband's consent to having his wife impregnated by a surrogate father is a promise that the child will be a part of the husband's family and be supported by him. The wife's reliance and action on that prom-

ise would estop the husband from later refusing to support the child.

Other states have compelled the husband to support such a child by virtue of his standing *in loco parentis*. A person who receives a child into his family under circumstances that give rise to a presumption that he intends to assume liability for its support stands *in loco parentis* to the child and must fulfill his duties. Annot., 90 A.L.R.2d 583, 586 (1950). Here it is argued that the husband's consent reasonably gives rise to such a presumption.

In *People v. Sorensen*, 68 Cal. 2d 280, 437 P.2d 495 (1968), the court held that the husband of a woman who, with his consent, was artificially inseminated with the semen of a third-party donor, was guilty of a crime of failing to support a child produced by the insemination. The court held that a reasonable man who, because of his sterile condition, consents to his wife's artificial insemination, should know that such behavior carries with it the legal responsibilities of a father and criminal responsibilities for nonsupport.

Wisconsin has no case law or statutes governing this situation. To adopt the obligation of support under the various reasonings of contract by the other states, however, does seem artificial and avoids the direct question of a husband's duty under these circumstances. We hold that a husband who, because of his sterile condition, consents to his wife's impregnation, with the understanding that a child will be created whom they will treat as their own, has the legal duties and responsibilities of fatherhood, including support. A husband who participates in the arrangement for the creation of a child cannot consider this a temporary relation to be assumed and disclaimed at will. Such an arrangement imposes an obligation to support the child for whose existence he is

responsible. To permit a husband's parental responsibilities under these circumstances to rest on a voluntary basis could place the entire burden of support on the child's mother and, if she is incapacitated, the burden is then on society.

*By the Court.*—Judgment affirmed.