(670 P.2d 923)
No. 54,670

R. S., *Appellee,* v. R. S., *Appellant.*

Opinion filed October 27, 1983.

*Lou Bjorgaard,* of Bonner Springs, for appellant.

*Ernest C. Ballweg,* of Cooke, Ballweg, Borth, Hunter & Simpson, of Prairie Village, for appellee.

Before REES, P.J., ABBOTT, J., and HARRY G. MILLER, District Judge retired, assigned.

ABBOTT, J.: This appeal arises out of a divorce action. The main issues involve the husband's responsibility to a child conceived during the marriage by heterologous insemination (artificial insemination by donor). We have substituted initials for names in the caption and will refer to the parties as "husband," "wife" and "child." The appellant husband also contends that the trial court abused its discretion in determining the division of property.

The trial court held for the wife on the disputed issues. Thus, we review the facts in a light most favorable to her and consider all reasonable inferences to be drawn therefrom.

Part of the husband's argument concerns K.S.A. 23-128, -129 and -130, which read as follows:

"23-128. **Artificial insemination; performance; consent.** The technique of heterologous artificial insemination may be performed in this state at the request and with the consent in writing of the husband and wife desiring the utilization of such technique for the purpose of conceiving a child or children.

"23-129. **Same; child is natural child at law.** Any child or children heretofore or hereafter born as the result of heterologous artificial insemination shall be considered at law in all respects the same as a naturally conceived child of the husband and wife so requesting and consenting to the use of such technique.

"23-130. **Artificial insemination; consent executed and filed; file not open to**

**public.** The consent provided for in this act shall be executed and acknowledged by both the husband and wife and the person who is to perform the technique, and an original thereof may be filed under the same rules as adoption papers in the district court of the county in which such husband and wife reside. The written consent so filed shall not be open to the general public, and the information contained therein may be released only to the persons executing such consent, or to persons having a legitimate interest therein as evidenced by a specific court order."

The parties were married in 1974. The wife first considered donor insemination in 1976 at the husband's suggestion. They consulted with a medical specialist at the Kansas University Medical Center concerning the procedure. The husband was present and orally consented for the procedure to be performed on his wife.

The treating doctor, despite being an expert in the field, was not aware that the husband should sign a written consent pursuant to K.S.A. 23-128. He did not require this husband, nor any other husband over a period of at least eight years, to do so. It was sometime after 1976 that the doctor began requiring the husbands of *new* patients to sign a consent form, so there are obviously a number of other children conceived by this process who are faced with a problem similar to that faced by the child in this case.

The wife made the appointments and received donor inseminations during her fertile periods for several months. She did not conceive during that time and so discontinued treatments. Although her husband denies it, she testified that he again orally consented on several occasions to her being artificially inseminated. Sometime during early 1980 she resumed treatment and immediately conceived. The same treating doctor inseminated her. The husband was aware of the treatments and did not object. Everyone concedes the husband had no contact with the treating doctor immediately prior to the successful treatment. The child was born on December 28, 1980. At no time during the marriage did the husband question that conception had occurred as a result of artificial insemination.

The trial court in its oral findings stated:

"It is clear from the evidence that no request and consent in writing was provided the physician. It is equally clear from the evidence that there was an actual request and consent made. K.S.A. 23-129 is the operative statute in this proceeding, and that statute does not require written consent. K.S.A. 23-128 does. The fact that the doctor in this case performed an act in a manner not authorized

by statute will not affect the legitimacy of the child of the Plaintiff and the Defendant. It is also clear from the evidence that the Defendant never revoked his consent and in fact acquiesced and ratified the process from time to time."

The husband first argues that there was insufficient evidence to support the trial court's finding that the child was conceived by heterologous insemination. This argument borders on being frivolous. The wife testified the child was a product of heterologous insemination. The husband did not testify otherwise nor did he ever question that fact during the marriage. Counsel for the husband offered no evidence to the contrary and made no effort during cross-examination of the wife to inquire about any other possible explanation of the pregnancy. The trial court found that the child was conceived as a result of heterologous insemination and the record supports that finding.

The husband also argues (one short paragraph without legal authority) that the trial court did not make adequate findings of fact as required by K.S.A. 60-252 and Supreme Court Rule 165 (230 Kan. lxxxix) to permit meaningful review. He rehashes his above argument and adds that the trial court finds an actual consent and request was made but does not show who made them. As we view the record, the treating doctor stated that the husband gave his permission for the procedure and the wife's testimony is to that effect. The trial court found that consent had been given and "that the Defendant never revoked his consent"; thus, a specific finding was made and the findings made by the trial court are sufficient to permit meaningful review.

The husband's principal argument is that K.S.A. 23-128, -129 and -130 require the written consent of the husband before a child born as the result of heterologous insemination can be considered the same as a naturally conceived child of the husband. None of these statutes indicates whether a husband has a duty to support a child conceived by heterologous insemination with oral consent but without written consent of the husband. This question is one of first impression in Kansas, but other states have found a duty to support based on a husband's actions and the doctrines of equitable estoppel and implied contract.

In *Gursky v. Gursky*, 39 Misc. 2d 1083, 242 N.Y.S.2d 406 (1963), the New York court found that a child born of heterologous insemination was not the legitimate issue of the husband even though he had consented in writing to the procedure,

42

because there was no statutory procedure to legitimize such a child. Nevertheless, the court ordered the husband to support the child, reasoning:

"The husband's declarations and conduct respecting the artificial insemination of his wife by means of a third-party donor, including the husband's written 'consent' to the procedure, implied a promise on his part to furnish support for any offspring resulting from the insemination. This, in the light of the wife's concurrence and submission to artificial insemination, was sufficient to constitute an implied contract. 'A promise will be implied where the agreement is instinct with obligation and the implication is supported by the circumstances.' (*Renner v. Stanley Co.*, 136 Misc. 492, 493.) And 'An agreement may result as a legal inference from the facts and circumstances of the case, although not formally stated in words.' (*Wells v. Mann*, 45 N.Y. 327, 331.)

"Moreover, a reading of the document of 'consent' signed by the husband clearly reveals that it constituted more than a mere acquiescence in, or approval of, or agreement to have the procedure of artificial insemination take place. The 'consent' was in its terms a request to the physician to conduct the artificial insemination for the express purpose of providing a child for the mutual happiness of the parties. There is nothing in the record to indicate that the wife would have undergone artificial insemination in the absence of the husband's consent. Hence it is reasonable to presume that she was induced so to act and thus changed her position to her detriment in reliance upon the husband's expressed wishes. To relieve the husband of any duty of furnishing support for the child resulting from the artificial insemination of the wife, to which she submitted in reliance on her husband's wishes, would cast a financial burden upon the wife which in equity and conscience should be borne by the husband. The circumstances properly call for invocation and application of the doctrine of equitable estoppel so as to cast upon the husband, as between husband and wife, the primary duty of support for the child here involved. It has been stated by the Court of Appeals that an estoppel 'rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury' (*Metropolitan Life Ins. Co. v. Childs Co.*, 230 N.Y. 285, 292; *Lynn v. Lynn*, 302 N.Y. 193, 205); and, a party may not, even innocently, mislead another and then claim the benefit of his deception (*Romano v. Metropolitan Life Ins. Co.*, 271 N.Y. 288, 293). See, also, *Triple Cities Constr. Co. v. Maryland Cas. Co.* (4 N Y 2d 443, 448).

"The court concludes in the instant case that the husband is liable for the support of the child here involved, whether on the basis for an implied contract to support or by reason of application of the doctrine of equitable estoppel." 39 Misc. 2d at 1088-89.

See also *Anonymous v. Anonymous,* 41 Misc. 2d 886, 246 N.Y.S.2d 835 (1964).

In *C.M. v. C.C.,* 152 N.J. Super. 160, 167, 377 A.2d 821 (1977), New Jersey held that "[w]hen a husband consents to his wife's artificial insemination from an anonymous donor, he takes upon himself the responsibilities of fatherhood." The court, in the

absence of statutory authority, relied on common law, stating at 166: "The courts have consistently shown a policy favoring the requirement that a child be provided with a father as well as a mother. In a situation where there is an anonymous donor the courts have required that the person who consents to the use of sperm, not his own, be responsible for fathering the child."

In 1981, New Jersey considered a case (*K.S. v. G.S.*, 182 N.J. Super. 102, 440 A.2d 64 [1981]) that factually is nearly identical to the case before us, including that the wife did not conceive until approximately fifteen months after the husband gave his *oral* consent to the artificial insemination. The husband claimed that he withdrew his consent and that the wife proceeded without his knowledge or approval. In the absence of any statutory authority on the subject, New Jersey held (at 109-10) that the "consent of the husband (in the case of married partners), once given, is presumed to be effective at the time when pregnancy occurs, unless the husband establishes by clear and convincing evidence that such consent has been revoked or rescinded" and that the defendant had failed to meet that burden.

In *People v. Sorensen,* 68 Cal. 2d 280, 66 Cal. Rptr. 7, 437 P.2d 495 (1968), the California court, in holding that a father who had consented to heterologous insemination was liable for criminal nonsupport of the resulting child, stated:

"In light of these principles of statutory construction, a reasonable man who, because of his inability to procreate, actively participates and consents to his wife's artificial insemination in the hope that a child will be produced whom they will treat as their own, knows that such behavior carries with it the legal responsibilities of fatherhood and criminal responsibility for nonsupport. One who consents to the production of a child cannot create a temporary relation to be assumed and disclaimed at will, but the arrangement must be of such character as to impose an obligation of supporting those for whose existence he is directly responsible. As noted by the trial court, it is safe to assume that without defendant's active participation and consent the child would not have been procreated." 68 Cal. 2d at 285.

Although not a case dealing with artificial insemination, we deem *In re Marriage of L.M.S. v. S.L.S.,* 105 Wis. 2d 118, 312 N.W.2d 853 (1981), analogous. In this Wisconsin divorce case, the parties conceded that the husband was sterile. The husband had wanted his wife to have a child. The wife testified they considered artificial insemination but had rejected it because of the cost and travel involved. She testified her husband suggested

that she become pregnant by another man and he would acknowledge the child as his own. A child was conceived in that manner and after the child's birth the husband recognized it as his own. The husband denied in the divorce proceeding that he had agreed to his wife's becoming pregnant by another man. The trial court found he had so agreed and that he was obligated to pay support for the child. The Wisconsin Court of Appeals in affirming the trial court held that a husband who participates in the arrangement for the creation of a child has a legal obligation to support the child for whose existence he is responsible.

As we view K.S.A. 23-128, it permits heterologous artificial insemination at the request and with the consent in writing of the husband and wife. It appears to have been enacted in response to fears of potential criminal and civil liability resulting from the procedure. We find nothing in K.S.A. 23-128, -129 or -130 that would express a legislative intent that a husband who orally consents to heterologous insemination cannot be held responsible on an equitable estoppel or implied contract theory.

Here the trial court found that defendant consented to the procedure and did not notify the treating doctor or his wife that he was withdrawing that consent.

We hold that when a husband consents to heterologous insemination of his wife, that consent is presumed to continue through the time the wife becomes pregnant unless the husband establishes by clear and convincing evidence that such consent had been withdrawn; and a husband who with his wife orally consents to the treating physician that his wife be heterologously inseminated for the purpose of producing a child of their own is estopped to deny that he is the father of the child, and he has impliedly agreed to support the child and act as its father.

The husband next contends the trial court abused its discretion in determining the division of property. We have reviewed the division of property and the trial court's reasons for making the division as it did. We are satisfied the trial judge considered all relevant factors and that he did not abuse his discretion in dividing the property as he did.

Affirmed.