**634**

K.B., Appellant,

v.

N.B., Appellee.

No. 04–86–00379–CV.

Court of Appeals of Texas,
San Antonio.

March 13, 1991.

Rehearing Denied May 22, 1991.

**636**

Thomas S. Terrell, Kerrville, David Rodriguez Weiner, Law Offices of Windle Turley, P.C., Dallas, for appellant.

Wallace T. Ferguson, Ferguson & Hix, Boerne, Kirk Patterson, James D. Stewart & Associates, Inc., San Antonio, for appellee.

Before REEVES, C.J., and PEEPLES and GARCIA,[1] JJ.

## OPINION

PEEPLES, Justice.

In this divorce case the only child of the marriage was conceived by artificial insemination. The husband[2] contends that because the parties did not comply with the Texas artificial insemination statute, which required that his consent be in writing, the parent-child relationship does not exist and the court erred in making him pay child support. He also contends that the court erred in assessing tort damages against him and in dividing the marital estate. We reverse the judgment for damages. On all other issues, we affirm.

The parties married in 1977. Unable to have children because the husband had undergone a vasectomy that proved to be irreversible, they resorted to artificial insemination by third-party donor. A male child was born in 1982. When this divorce proceeding began, the husband formally denied paternity and resisted paying child support. He denied that he had consented orally, but the jury found that he had consented to the procedure and also that he had ratified it. He does not challenge the sufficiency of the evidence to support those findings. The jury also found that he had threatened to publicize the child's parentage if the wife sought child support or a share of the marital property, and it awarded $110,000 damages to the child. Concerning the marital estate, the jury found that two of the husband's corporations were his alter ego and that the marital homestead was community property. The court decreed that the parent-child relationship existed, gave the wife custody, ordered the husband to pay child support, awarded the child tort damages of $110,000, appointed a receiver to administer the alter ego businesses and pay the child support if the husband did not, and awarded the homestead to the wife. The husband challenges these and other rulings.

## I.

■ The parties agree that the husband is not the child's biological father and that the presumption of legitimacy has been conclusively rebutted. *See* TEX.FAM. CODE ANN. § 12.02 (Vernon Supp.1991) (rebuttable presumption that child born during marriage is husband's legitimate child). The husband contends that because he did not consent to the insemination procedure in writing, the child's legitimacy cannot rest on § 12.03, which read as follows in 1982, when the child was conceived:

§ 12.03. Artificial Insemination

(a) If a husband consents to the artificial insemination of his wife, any resulting child is the legitimate child of both of

---

1. Justice Orlando Garcia replaced former Chief Justice Carlos C. Cadena (Retired), who was a member of the panel at submission.

2. We see no reason to name the parties and therefore will refer to them as husband, wife, and child.

them. *The consent must be in writing and must be acknowledged.*

TEX.FAM.CODE ANN. § 12.03 (Vernon 1986) (emphasis added).[3] Even though this statute makes written and acknowledged consent mandatory, the wife urges us to hold that oral consent suffices. The husband, of course, disagrees. In addition, though he does not directly attack the finding of ratification he does assert that because there was no written consent, under § 12.03 the court could not establish the parent-child relationship or require him to pay child support.

In view of § 12.03's clear requirement of a writing, we cannot accept the wife's suggestion that oral consent, without more, suffices. The legislature has every right to insist that important contractual relationships be evidenced by a writing, and when it has done so, the courts are not at liberty to ignore the statute.[4] Under settled principles of statutory construction, we must presume that the legislature had a purpose for each word. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981). Here the legislature consciously devoted an entire sentence to the requirement of an acknowledged writing.

■ The wife urges us to follow *In re Marriage of Adams*, 174 Ill.App.3d 595, 124 Ill.Dec. 184, 528 N.E.2d 1075 (Ct.App. 1988), *rev'd on other grounds*,[5] 133 Ill.2d 437, 141 Ill.Dec. 448, 551 N.E.2d 635 (1990), and *R.S. v. R.S.*, 9 Kan.App.2d 39, 670 P.2d 923 (Ct.App.1983), in which courts faced with comparable written-consent statutes held that a husband can be estopped to deny the child support obligation.[6] Several

**3.** In 1988 the legislature deleted the word "legitimate." *See* TEX.FAM.CODE ANN. § 12.03(a) (Vernon Supp.1991).

**4.** In *Simmons v. Arnim*, 110 Tex. 309, 324, 220 S.W. 66, 70 (1920), the supreme court expressed the matter as follows:

Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

Our courts have often quoted this passage with approval. *See, e.g., Railroad Comm'n v. Miller,* 434 S.W.2d 670, 672 (Tex.1968); *Rudman v. Railroad Comm'n,* 162 Tex. 579, 584, 349 S.W.2d 717, 721 (1961); *Dickens v. Second Court of Appeals,* 727 S.W.2d 542, 548 (Tex.Crim.App. 1987). Recently the supreme court again quoted this language with approval, omitting only the fifth sentence ("They [the courts] are not the law-making body"). *See RepublicBank Dallas v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985).

**5.** In *Adams* the lawyers for the parties and the child had stipulated that Illinois law would apply instead of the law of Florida, where the child was conceived and born. The Illinois Supreme Court reversed, holding that the lower courts should have applied Florida law instead of Illinois law even though no one had raised the choice-of-law issue in any court. It is clear that the supreme court felt uncomfortable with the lower court's rationale. According to the supreme court, the Illinois statute's requirement of written consent "could be considered a mandatory requirement for establishing a parent-child relationship." 141 Ill.Dec. at 451, 551 N.E.2d at 638. Florida law establishes an irrebuttable presumption of legitimacy, provided that both husband and wife consented in writing to the artificial insemination. *Id.* Even though the parties had not raised the matter in the trial court or in any appellate court, the supreme court concluded sua sponte that the stipulation (that Illinois law applied) was unreasonable and said, "We do not believe that we should allow the minor to forgo what benefits may exist for him under the Florida statute and to stipulate instead to the application of what is perhaps the more stringent provision." *Id.* 141 Ill.Dec. at 452, 551 N.E.2d at 639. In light of this subsequent history, the vitality of the intermediate court's holding in *Adams* is, to say the least, questionable.

**6.** It is not clear whether *Adams* and *R.S.* deal only with support or also with the child's status. The two cases clearly hold that the husband can be estopped to deny the support obligation. Both opinions also talk in terms of the child's status and use language that suggests the husband can be estopped to deny that he is the child's father. *R.S.* stated that a husband who orally consents "is estopped to deny that he is the father of the child, and he has impliedly agreed to support the child and act as its father." 670 P.2d at 928. *Adams* quotes this language with approval. 124 Ill.Dec. at 604, 528 N.E.2d at 1084. Yet both opinions speak throughout of the support obligation and holding the husband "responsible."

courts have imposed child support obligations in artificial insemination cases where there was no statute requiring written consent. *See, e.g., People v. Sorensen,* 68 Cal.2d 280, 437 P.2d 495, 66 Cal.Rptr. 7, 25 A.L.R.3d 1093 (1968); *Gursky v. Gursky,* 39 Misc.2d 1083, 242 N.Y.S.2d 406 (Sup.Ct.1963); *In re Baby Doe,* 291 S.C. 389, 353 S.E.2d 877 (1987); Annotation, *Legal Consequences of Human Artificial Insemination,* 25 A.L.R.3d 1103 (1969).

Language in *R.S.* suggests that mere oral consent to artificial insemination in the presence of the physician will estop a husband from relying on a statute that says plainly that consent must be in writing. The *R.S.* court summarized its holding as follows:

> We hold that when a husband consents to heterologous insemination of his wife, that consent is presumed to continue through the time the wife becomes pregnant unless the husband establishes by clear and convincing evidence that such consent had been withdrawn; and a husband who with his wife orally consents to the treating physician that his wife be heterologously inseminated for the purpose of producing a child of their own is estopped to deny that he is the father of the child, and he has impliedly agreed to support the child and act as its father.

670 P.2d at 928. *Adams* quoted this passage with approval. 124 Ill.Dec. at 604, 528 N.E.2d at 1084.

But the evidence in both cases established more than bare oral consent witnessed by the doctor. In *R.S.* the husband was fully aware of the artificial insemination, did not object to it, and apparently treated the child as his own for some time after birth. The trial court found "that the [husband] never revoked his consent and in fact acquiesced and ratified the process from time to time." *See* 670 P.2d at 925. Similarly, though the husband disputed much of the evidence in *Adams,* it appears that there was more than simple oral consent. The husband, who had undergone a vasectomy, discussed artificial insemination with his wife, visited the doctor's office with her, was aware that she became preg-

nant, participated in natural childbirth classes, acquiesced in being named father on the birth certificate, and did not disclaim parenthood until divorce proceedings were filed. *See* 124 Ill.Dec. at 605, 528 N.E.2d at 1085. Nevertheless, the *Adams* court appears to have held simply that an oral agreement can estop a husband to rely on the statute that requires a writing.

We are not willing to hold that oral consent will estop a husband from asserting § 12.03, or estop him from denying paternity or avoiding child support. That would nullify the requirement of a writing by enabling a litigant to prove an oral agreement without more by labeling it estoppel. But in this case, as in *R.S.* and *Adams,* there is much more, as is evidenced by the jury's finding of ratification.

▮ Ratification occurs when a person who knows all the material facts confirms or adopts a prior act that did not then legally bind him and which he could have repudiated. *See T & R Associates, Inc. v. City of Amarillo,* 688 S.W.2d 622, 630 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.); *Wise v. Pena,* 552 S.W.2d 196, 199 (Tex.Civ. App.—Corpus Christi 1977, writ dism'd). Essentially the same definition has been stated in three elements: (1) approval by act, word, or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intention of giving validity to the earlier act. *Motel Enterprises, Inc. v. Nobani,* 784 S.W.2d 545, 547 (Tex.App.— Houston [1st Dist.] 1990, no writ); *Jamail v. Thomas,* 481 S.W.2d 485, 490 (Tex.Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.).

▮ Ratification may be inferred from conduct and need not be express. *Rosenbaum v. Texas Bldg. & Mortg. Co.,* 140 Tex. 325, 167 S.W.2d 506, 508 (1943); *Motel Enterprises, Inc. v. Nobani,* 784 S.W.2d at 547; *Spellman v. American Universal Invest. Co.,* 687 S.W.2d 27, 29 (Tex.App.— Corpus Christi 1984, writ ref'd n.r.e.). The courts have stressed that one who asserts ratification must prove that the ratifying party acted upon full knowledge of all material facts. *Land Title Co. v. Stigler,* 609 S.W.2d 754, 756–57 (Tex.1980); *Rourke v.*

*Garza*, 530 S.W.2d 794, 805 (Tex.1975); *Frazier v. Wynn*, 472 S.W.2d 750, 753 (Tex.1971); *Bodovsky v. Texoma Nat'l Bank*, 584 S.W.2d 868, 872–73 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.).

■ The trial court gave a substantially correct definition of the elements of ratification, and the record contains sufficient proof of them. There was evidence that from the outset the husband had full knowledge of the facts and willingly participated in the artificial insemination. Wanting a child and unable to reverse his vasectomy, he chose artificial insemination instead of adoption. Together both spouses visited for an hour and a half with the infertility specialist and reviewed the procedure with her. They discussed such details as the physical characteristics they wanted the child to have. The infertility specialist confirmed that the husband was a willing and enthusiastic participant. The husband disputed much of this testimony, but in this court he does not challenge the factual support for the jury's finding. Moreover, he admitted that he participated in childbirth classes, became enthusiastic about the pregnancy as it progressed, was glad to have the child, named him "junior," and was listed as father on the birth certificate. He later spoke of "our baby." Several years went by before he tried to repudiate parenthood. The ratification finding is supported by the evidence.

In analogous situations our courts have held that conduct comparable to ratification can prevent a party to a transaction from asserting that a necessary written instrument was not signed or filed. For example, even though Texas law once required a written and recorded instrument of adoption, the supreme court said it would recognize adoption by estoppel when a child has lived with the adopting parents and (1) the adopting parents have tried but failed to comply with formal statutory adoption procedures, or (2) the adopting parents took custody pursuant to an agreement with the biological parent or parents to adopt the child and no formal adoption took place. *See Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972, 973–74 (1951). Similarly, the courts will uphold a parol sale of land where the buyer proves that he paid the consideration, took possession, and made valuable and permanent improvements with the seller's consent. *See Sharp v. Stacy*, 535 S.W.2d 345, 347–48 (Tex.1976); *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921).

Our ratification holding is narrow and is limited to the unique facts of this case. Artificial insemination is not an ordinary transaction between two persons. It brings new life into being. Unlike more common contractual arrangements, this transaction could not be rescinded, and nothing like restitution is possible. Here the husband knew about the artificial insemination process and participated in it willingly from the beginning. He acknowledged the child and publicly held him out as his own son for several years in the ways detailed above. Under the unique facts of this case, he has ratified the parent-child relationship. We hold that the finding of ratification supports the court's ruling that the parent-child relationship existed. In view of this conclusion, we also hold that the court properly ordered child support, which the husband has attacked only on the ground that he is not the child's father.

## II.

The husband next challenges the award of damages against him for intentional infliction of emotional distress. There is evidence that he threatened that if his wife sought child support or any of the marital property he would publicize that the child was conceived by artificial insemination. He did later plead that he owed no child support because the child was conceived by artificial insemination and he was not the father. In addition his attorney, under the mistaken impression that the husband had already told his adult daughter from a previous marriage about the artificial insemination, mentioned it to her during preparation for trial. There is no evidence that the child was ever told about the artificial insemination and no evidence that the hus-

band ever publicized matters except in his pleading.

The jury found that he had threatened to make the facts public, that the wife sustained no damages, and that the child sustained actual damages of $10,000. The jury also assessed $100,000 in exemplary damages on behalf of the child. The trial court rendered judgment on the verdict.

■ The husband contends that he cannot be held liable for a statement in a pleading that he had a legal right to make, and that there is no evidence to support the jury's findings. In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the trier of fact's decision and disregard all contrary evidence and inferences. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ The tort of intentional infliction of emotional distress requires proof of four elements: that (1) the defendant acted intentionally or recklessly; (2) his conduct was extreme and outrageous; (3) his actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 692 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Chiles v. Chiles,* 779 S.W.2d 127, 130 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 942 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.).

■ Severity of distress is an element of the cause of action, not simply a matter of damages. Concerning this fourth element, respected authorities have emphasized that "[t]he emotional distress must in fact exist, and it must be severe." PROSSER & KEETON ON TORTS § 12, at 63 (5th ed. 1984). The cause of action rests upon RESTATEMENT (SECOND) OF TORTS § 46 (1965), which stresses that the emotional distress must be severe. Comment *j* (entitled "Severe emotional distress") says, "The rule stated in this Section applies only where the emotional distress *has in fact resulted, and where it is severe* . . . . It is only where it [the distress] is *extreme* that the *liability* arises . . . . The law intervenes only where the distress inflicted is so *severe* that no reasonable man could be expected to endure it." RESTATEMENT (SECOND) OF TORTS § 46 comment *j* (1965) (emphasis added). Liability does not become a jury issue unless there is evidence that the distress was severe. "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Id.*

■ There is no evidence that the child has ever suffered any distress from appellant's actions, severe or otherwise. Indeed the record contains no evidence that the husband or anyone else has ever told the child that he was conceived through artificial insemination. It is of course true, as the wife contends, that one may recover damages for emotional distress to accrue in the future. But that does not dispense with the fourth element of the cause of action: the existence of severe distress.

The wife cites only two bits of evidence to support the jury's findings. The statement to the husband's adult daughter was made by the husband's lawyer, and nothing suggests that he said it to help the husband make good on his threat to publicize, or that it was extreme and outrageous within the meaning of § 46 of the restatement. Nor was the statement ever communicated to the child.

■ Concerning the statement in the pleading, § 12.06 of the family code entitled the husband to deny paternity, though nothing forced him to plead the details. The law ordinarily protects statements made in judicial proceedings. In defamation suits, for example, statements in pleadings are absolutely privileged—that is, not actionable regardless of the negligence or malice with which they were made. *See James v. Brown,* 637 S.W.2d 914, 916–17 (Tex.1982). We hold that the same absolute privilege applies when the theory of recovery is intentional infliction of emotional distress. It would be absurd to accord absolute privilege to false and defamatory statements but not to true statements like the one pleaded here. If

that were the law, a litigant could plead around the defamation privilege of *James v. Brown* by labeling his defamation case as one for intentional infliction of emotional distress. Litigants must be free to plead their cases and join issue without fear that statements in their pleadings will elicit a new lawsuit. If statements in pleadings could support a suit for intentional infliction of emotional distress, we see no end to the suits that could be brought by embittered litigants, as each succeeding case could prompt another lawsuit about malicious statements made in the last. A different set of rules governs suits alleging malicious *institution* of civil proceedings. *See James v. Brown*, 637 S.W.2d at 918–19.

The wife suggests that the child can recover now for damages that he will probably experience in the future. But the law does not allow recovery for damages that might or might not be sustained in the future, resulting from a threatened act that has not yet happened and might never happen. "The threat of future harm, not yet realized, is not enough." PROSSER & KEETON ON TORTS § 30, at 165 (5th ed. 1984); *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1136 (5th Cir.1985).

For the reasons stated, we reverse the judgment for actual damages and render judgment that the child take nothing on his tort action. There being no recovery of actual damages, the award of exemplary damages cannot stand. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 745 (Tex.1986).

### III.

■ The court set aside a deed from the husband to his brother-in-law and awarded the property to the child's attorney ad litem as $3000 toward his attorney's fees. Because his brother-in-law was not a party to this lawsuit, the husband contends that the court had no jurisdiction to affect his rights and set aside the deed. He cites *Petroleum Anchor Equip., Inc. v. Tyra*, 406 S.W.2d 891 (Tex.1966), for this proposition. But that case must be read in light of *Cooper v. Texas Gulf Indus., Inc.*, 513 S.W.2d 200 (Tex.1974), which held that under amended rule 39 only in rare instances will absence of a party deprive a court of jurisdiction to adjudicate the issues joined between the parties already before it. *Id.* at 204.

■ Frequently a divorce court must divide marital assets in which third parties may claim an interest. Such third-party claims do not deprive the court of jurisdiction to divide among the litigants whatever interests they may have in the property. *See Miller v. Miller*, 700 S.W.2d 941, 950 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Spruill v. Spruill*, 624 S.W.2d 694, 697 (Tex.App.—El Paso 1981, writ dism'd); *Bourne v. Bourne*, 559 S.W.2d 844, 847 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). The court's adjudication of the issues before it does not prejudice the right of non-party third persons to be heard later. *Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex.1989) (judgment collaterally estops only parties and privies); *Rush v. Montgomery Ward*, 757 S.W.2d 521, 523 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Broadway Drug Store v. Trowbridge*, 435 S.W.2d 268, 269–70 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ).

Rule 39 itself lists the factors a trial court should consider when deciding whether to order the joinder of a third party, and certainly there are cases in which a court *should* order joinder in the interest of judicial economy and fairness to everyone concerned. But in the case before us failure to order joinder of the brother-in-law did not deprive the court of *jurisdiction* over the parties and the property before it. The court had jurisdiction to adjudicate the rights of the husband and the wife to the property in question, and the husband lacks standing to assert whatever rights his brother-in-law may have in the property. A party "may not complain of errors that do not injuriously affect him or which merely affect the rights of others." *Buckholts Indep. School Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex.1982) (quoting *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex.1973)).

## IV.

The jury found that the homestead was community property, and the court awarded it to the wife. The husband contends that the homestead was his separate property and that the evidence is legally and factually insufficient to support the jury's finding to the contrary. Because he had the burden of proof on this issue, his burden in this court is to show that a "separate property" answer was established as a matter of law or that the "community property" answer is against the great weight and preponderance of the evidence. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

The homestead consisted of a tract of land owned by the husband's corporation before the marriage and a house built on the land after the marriage. During the marriage the corporation deeded the land to the husband for "ten dollars and other good and valuable consideration." He testified that he never paid the corporation for the land, but the wife testified that community funds paid for it.

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX.FAM.CODE ANN. § 5.02 (Vernon Supp.1991). To establish that property is separate requires clear and convincing evidence. *Id.* Question 31 asked the jury whether the husband had proved by clear and convincing evidence that the property was his separate property, and the charge contained a correct instruction setting forth the pertinent principles of community property law, including the rule that separate property includes property claimed or owned prior to the marriage. *See id.* § 5.01(a)(1) (Vernon 1975). The jury characterized the property as community and not separate.

■■■■ The husband attacks the legal and factual sufficiency of this finding. We conclude that the evidence is sufficient. The homestead was acquired from a third person during the marriage, and it therefore was presumed to be community property. The community presumption applies even though the deed conveyed title to the husband in his name, there being no recital in the deed that the land was conveyed to him as his separate property or that he bought it with separate funds or credit. *See Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 430–31 (Tex.1970); *Hodge v. Ellis*, 154 Tex. 341, 277 S.W.2d 900, 904 (1955); *Kitchens v. Kitchens*, 372 S.W.2d 249, 255 (Tex.Civ.App.—Waco 1963, writ dism'd). The wife testified, vaguely and in general terms, that money from community bank accounts paid for the homestead. The husband testified that the land was to be a distribution from the corporation, and that he never paid the corporation for it. He explained that the co-owner, his former wife, was to receive property for her share at some future time, but that she had not yet been paid. No checks were produced, but there is evidence that any existing community check records—which might have shown payments or lack of payments—were in the husband's possession and were not produced during discovery. Under these circumstances, a jury question was presented. We hold that the husband did not rebut the community presumption as a matter of law and that the jury's failure to find that he had rebutted it is within the evidence.

We are next asked to disregard the jury's answer to question 31 (that the homestead is community property) because of the answer to question 39 (alter ego). This argument was not made in the trial court and therefore it has been waived. TEX.R.APP.P. 52(a).

## V.

Three other issues remain. On the second day of trial, counsel for the husband moved for a mistrial and asked to withdraw his announcement of ready because his client thought he was not prepared for trial. The court overruled the motion, which was essentially a motion for continuance, and stated that he found counsel very well prepared. The court's denial of the motion was well within its discretion. *See State v. Wood Oil Distr. Co.*, 751 S.W.2d 863, 865 (Tex.1988).

The husband also challenges the court's award of additional attorney's fees to the wife in the event of an appeal. He argues that if we substantially modify the judgment we should reduce the amount of the appellate attorney's fees. It is true that an award of appellate attorney's fees should be conditioned on a successful appeal; otherwise the appellant would be penalized for bringing a valid appeal. *See Smith v. Smith*, 757 S.W.2d 422, 426 (Tex. App.—Dallas 1988, writ denied); *Siegler v. Williams*, 658 S.W.2d 236, 241 (Tex.App.—Houston [1st Dist.] 1983, no writ); *King Optical v. Automatic Data Processing*, 542 S.W.2d 213, 218 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). But we have upheld the husband's appellate complaints on only one issue, the child's tort recovery, for which no attorney's fees were recoverable. The award of appellate attorney's fees is therefore affirmed.

We need not reach the husband's final complaint. The court set aside certain parcels of property owned by one of his corporations and transferred them to a receiver to secure the payment of child support. The husband challenges this action and the jury's finding that the corporation was his alter ego. The wife's brief stated that more than a year after the trial the parties had settled all disputes concerning the properties in question. We have received a supplemental transcript, which verifies that in a subsequent suit, in which the receiver was a party, the litigants settled their disputes about ownership of all the affected properties. We hold that the husband's complaints about the alter-ego finding and the receivership are moot.

The portion of the judgment that awards damages for intentional infliction of emotional distress is reversed, and on that cause of action judgment is rendered that the child take nothing. In all other respects the judgment is affirmed.