691 So.2d 268 (1997)
PITTMAN CONSTRUCTION COMPANY, INC. and Albert E. Pittman
v.
Charles R. PITTMAN and C.R. Pittman Construction Company, Inc.
Nos. 96-CA-1498, 96-C-1079.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1997.
Writ Denied May 16, 1997.
*269 Lawrence D. Wiedemann, Wiedemann & Wiedemann, New Orleans, for Defendants/Appellees.
Julian R. Murray, Jr., Chehardy, Sherman, Ellis, Brelin & Murray, Metairie, for Plaintiff/Appellant Albert E. Pittman.
Gerald J. Gallinghouse, New Orleans, for Plaintiff/Appellant Pittman Construction Co., Inc.
Before BYRNES, LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
Pittman Construction Company (Pittman) sought supervisory writs and appealed a March 18, 1996 judgment assessing "sanctions" in the amount of $25,000.00 in favor of C.R. Pittman Construction Company as a result of allegedly inappropriate behavior by Pittman and its counsel during an arbitration hearing.[1]
Pittman asserts that the "sanctions" judgment is subject to direct appeal because there are other issues before the court. According to Pittman, those other issues include the arbitrator's decision to assess $265,568.00 against Pittman as a starting point in the arbitration proceedings without first conducting a hearing on that issue.
Although, for reasons discussed infra, we agree that this matter is subject to our appellate jurisdiction, we disagree with Pittman's appreciation of the issues before us. The March 18th judgment which is the subject of our review adjudicates only two issues, the $25,000.00 fine and the remand back to the arbitrator to promptly complete the matter. Pittman's brief assigns four errors. Each error addresses the reasons why the trial judge was wrong imposing the $25,000.00 sanction/contempt fine. No arguments are advanced in brief regarding any error in the remand to the arbitrator.[2] Thus, technically, the only issue before us is the court imposed fine against Pittman. However, appellants urge that we should seize the opportunity this case presents to set forth basic principles to guide an arbitrator.

APPEAL OR SUPERVISORY REVIEW
It is a well established rule of law that a judgment holding a party in contempt of court is not reviewable by appeal, but is subject to review via application for supervisory writs. State ex rel. Hess v. Guste, 603 So.2d 196 (La.App. 4th Cir.1992), writ den. 607 So.2d 562 (La.1992).[3] This rule is applicable to situations where, during the course of a civil proceeding, a party to that proceeding is held in contempt. However, where the object of the proceedings before the Court is to hold someone in contempt for violating the orders of the court, a direct appeal is an appropriate remedy since, in those instances, the trial court judgment would be final. For example, a judgment on a rule to hold a spouse in contempt for failure to meet court ordered support obligations would be a final, appealable judgment even though it is technically a contempt judgment.[4]
In the instant proceedings the judgment at issue, although rendered during on going civil proceedings, was the result of a specific motion for contempt filed by the appellees. It was not a direct contempt of *270 the court. See, La. C.C.Pro. art. 222. We conclude it is a final judgment subject to the appellate jurisdiction of this court. We deny C.R. Pittman's motion to dismiss the appeal and now consider its merits.

FACTS AND PROCEDURAL HISTORY:
On July 3, 1991, Pittman Construction Company, Inc., Albert E. Pittman (collectively referred to as Pittman), C.R. Pittman Construction Company, Inc. and Charles R. Pittman (collectively referred to as C.R. Pittman) entered into an agreement for the corporate reorganization of Pittman Construction Company, sometimes referred to as the "Splitoff Agreement". Pittman is the old company and C.R. Pittman is the new company.
Article 4 of the Splitoff Agreement provided for arbitration pursuant to Louisiana's arbitration laws in the event that the parties were unable to resolve disputes arising out of, relating to or resulting from the agreement. On September 3,1991, Pittman filed a petition in Civil District Court for the Parish of Orleans to compel C.R. Pittman to submit to arbitration fifteen disputes that could not be amicably settled. Pittman alleged that C.R. Pittman refused to submit to arbitration. At the time of the filing of the petition, Pittman was represented by Gerald J. Gallinghouse and Fred J. Cassibry. C.R. Pittman was represented by Lawrence Wiedemann.
On September 10, 1991, the trial court ordered the parties to arbitrate. Retired Judge John C. Boutall was appointed arbitrator. Several times court intervention was sought by Pittman to compel C.R. Pittman to provide documents and move forward with the arbitration process. Two additional suits were filed by Pittman against C.R. Pittman for judicial relief in resolving ongoing disputes.[5]
In June, 1992, Pittman sought leave of court to supplement its petition and to enforce the agreement. C.R. Pittman filed a counter motion to compel Pittman to arbitrate their dispute. Following an October 9, 1992 hearing, the court ordered the matter back to arbitration. The process continued in arbitration, however nothing was resolved.
On November 23, 1994, Pittman filed a motion for a conference to ascertain the status of the many disputes and to advance the arbitration proceedings. Sometime during this same month, Fred Cassibry withdrew as counsel for Pittman and Curt Blankenship enrolled as additional counsel. Subsequently, Julian Murray, Jr. replaced Blankenship as additional counsel for Pittman.
On December 22,1994, a status conference was held with the arbitrator, the parties and their counsel. Various ways and means to resolve the disputes were discussed. However, once again, nothing was resolved. On February 13, 1995, Pittman filed a show cause motion to terminate the arbitration proceedings and to go forward with judicial proceedings.
As a result of that motion, the trial court allowed Judge Boutall to withdraw as arbitrator due to illness, appointed the Honorable Lorain F. Wingerter (retired) as the new arbitrator, ordered him to begin arbitration hearings within 30 days and to continue the hearings without interruption and render all decisions by June 30, 1995. This deadline was later extended to December 31, 1995.
Between April and October, 1995, several informal meetings were held at the arbitrator's home attended by counsel for the parties. Various matters were informally discussed.
On October 30, 1995, the arbitrator scheduled formal hearings to begin December 28, 1995. During the December hearing, a disagreement arose as to an award of $265,568.00 in favor of C.R. Pittman which the arbitrator stated that he was going to sign and which he suggested was the starting point for resolution of the remaining issues. Pittman's attorney, Gerald J. Gallinghouse, vehemently objected to this finding absent a hearing on the matter. Gallinghouse requested a recess in order to petition the trial court for a stay of the arbitration and to review the proceedings. The discourse between the arbitrator and counsel for Pittman ended with the arbitrator adjourning the *271 hearing after Pittman and its counsel refused to participate further with the arbitration proceedings. Later that same day, the arbitrator signed the judgment assessing $265,568.00 as a base amount due C.R. Pittman upon which to resolve the accounting between the two companies.
On January 5, 1996, C.R. Pittman filed a show cause motion for default judgment on all claims asserted by C.R. Pittman against Pittman, or in the alternative to strike Pittman's defenses to C.R. Pittman's claims and a rule to show cause why Pittman and its counsel, Gallinghouse and Murray, should not be held in contempt for refusing to proceed with the arbitration proceedings and for unwarranted character attacks on the arbitrator.
Pittman filed a show cause motion to vacate and set aside the arbitrator's award, judgment and decision of December 28,1995; to terminate the arbitration or, in the alternative, to recuse and replace the arbitrator.
The trial court held several hearings on the matter on January 26,1996, February 14, 1996 and March 8, 1996. The hearings consisted only of oral arguments by Gerald J. Gallinghouse, Julian Murray, Lawrence Wiedemann and Karen Wiedemann. No evidence or testimony was taken. Following the hearings, the trial court rendered two judgments, the first dated February 8, 1996 and the second dated March 18,1996.
In the February 8, 1996 judgment, the court assessed a fine of $24,900.00 against Pittman and Gallinghouse, jointly, severally and in solido and a fine of $100.00 against Pittman and Murray, jointly, severally and in solido. The amounts were in favor of C.R. Pittman. In his reasons for judgment, the court characterized the fine as "sanctions". The court also rendered judgment in favor of C.R. Pittman and against Pittman, striking Pittman's defenses "to the matters before the arbitration on 28 December 1995".
On that same day, in a separate written order, the court extended the arbitration indefinitely pending a final decision by the arbitrator or unless the court terminated the arbitration proceedings. The court also ordered the arbitrator to "reconvene the arbitration and render a decision in accordance with the law, evidence and the orders of this Court". No deadline was given.
Following that judgment, Pittman, Gallinghouse and Murray filed a motion for a new trial. Movers alleged that no evidence was presented that they engaged in contumacious behavior or conduct; that sanctions were never requested; that the fine of $25,000.00 exceeds the amount legally allowed for contempt and that the striking of Pittman's defenses was not a remedy requested by C.R. Pittman. On March 8, 1996 the court granted in part the new trial motion and amended its February 8, 1996 judgment to provide as follows:
Judgment is rendered in favor of C.R. Pittman Construction Company, Inc. and against Pittman Construction Company, Inc. in the sum of $25,000.00.
The judgment further remanded the matter back to the arbitrator to promptly complete the arbitration and render a decision in accordance with the law and the reasons set forth by the Court. The Court set aside its previous decree which had stricken Pittman's defenses.
Pittman now appeals the judgment of the trial court asserting the following assignments of error:
1) The trial court erred by failing to hold contradictory and evidentiary hearings on C.R. Pittman's show cause rule for contempt;
2) The trial court erred by failing to hold contradictory and evidentiary hearings on Pittman's peremptory exceptions of no right and cause of action;
3) The trial court erred by failing to conduct a contradictory and evidentiary hearing on Pittman's motion for a new trial;
4) The trial court erred by imposing a $25,000.00 fine for contempt without a contradictory hearing.
Although the trial court's reasons characterize the $25,000.00 award as "sanctions", it is, in actuality, a fine imposed for contempt of court. Sanctions are recognized in Code of Civil Procedure articles 863, 1420 and 1471. The motions before the court clearly did not seek sanctions pursuant to those *272 articles and thus the trial court mischaracterized the award. Regardless, the issue before us is whether the fine was both procedurally and substantively proper.
Initially we note that the fine levied against Pittman was because of its behavior before the arbitrator at the December 28, 1995 hearing. That conclusion is consistent with the allegations of C.R. Pittman's motion for contempt wherein it is alleged that Pittman walked out of the arbitration and impunged the integrity of the arbitrator. Thus, the trial court's ruling is that Pittman was guilty of constructive contempt rather than direct contempt.
Our law provides for direct and constructive contempt of court. La. C.C.Pro. art. 221. "A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, on a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La. C.C. Pro. art. 222.[6] Article 224 defines constructive contempt as "any contempt other than a direct one." The article lists ten instances which constitute constructive contempt. We find the second and last enumerated instance relevant to this case. Those two provisions define constructive contempt as:
(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
(10) Any other act or omission punishable by law as a contempt of court, or intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt. La. C.C. Pro. art. 224(2)(10). (emphasis added)
However, "[a] person may not be adjudged guilty of a contempt of court except for misconduct defined as such or made punishable as such, expressly by law." La. C.C.Pro. art. 227. The punishment for contempt is provided in La. R.S. 13:4611.
The entire factual scenario which forms the basis of the judgment before us is the hearing before the arbitrator on December 28, 1995. The trial judge made the entire transcript of those proceedings part of his reasons for judgment. No other evidence was presented to the court and thus the Court's determination was based entirely on that transcript. We have reviewed it, just as the trial judge did, and reach the following conclusions.
The proceedings were set for four days of hearings. At the beginning of the hearing the arbitrator[7] announced that based on the information provided by the accountants, he had reached a starting point for resolution of the issues. That starting point was the $265,568.00 allegedly due by Pittman to C.R. Pittman. The arbitrator explained that it was his understanding that the parties had agreed to the amount reached by the accountants and that the remaining issues of "who owed what to whom" would then be resolved at the hearing. Pittman did not concur with that understanding. From that point on, things deteriorated.
At first, Mr. Gallinghouse requested a hearing on the "starting point" issue. At some subsequent point in time he was apparently yelling. At least that was the arbitrator's view. Then Mr. Gallinghouse suggested that if the arbitrator ruled the way he had indicated that "not only that you would be wrong, but you would be biased". The arbitrator's response was that he couldn't be biased because he knew nothing of the case. Mr. Gallinghouse then commented, "[a]nd I wonder what you know now". Read in context, it is suggestive of an accusation of bias. However, further in the transcript, Mr. Gallinghouse states that it was not his intent to impugn the arbitrator's integrity.
The issue then revolved around what was perceived to be another pre-hearing judgment by the arbitrator concerning whether the Splitoff agreement provided for an assignment between the two companies.
*273 Again, Mr. Gallinghouse and Mr. Murray requested an evidentiary hearing in order to present evidence to support their argument that there was an assignment. The arbitrator opined that it was not an assignment, and then asked Pittman's attorneys if it (assignment vs non assignment) made any difference. Again, the exchanges between the arbitrator and Mr. Gallinghouse became rather excited, and at one point, Mr. Gallinghouse made reference to a lunch the arbitrator had with opposing counsel. The remarks by Mr. Gallinghouse suggest that the arbitrator was unduly influenced by opposing counsel.
The final episode in the hearing was the decision by Mr. Gallinghouse and Mr. Murray to discontinue their participation in the proceedings in order to seek relief in the district court. They each asked for a recess, which the arbitrator "formally" denied. However, he did state that "[i]f you all of your own volition are going to walk out on this matter, I'm not going to conduct the hearing. I'm going to suspend the hearing[.]" The arbitration hearing was then adjourned.
Pittman's attorneys argued that there was no way to preserve their due process rights before the arbitrator, and thus in an abundance of caution, refused to go forward in that forum. They argued that their due process rights to a formal hearing were denied and had they gone forward, those rights would have been waived. Their relief, they argued, would be in the district court.[8]
After review of the evidence, we conclude that it was error for the trial court to impose a fine on Pittman Construction Company, Inc.[9] While it can be argued that the remarks by Mr. Gallinghouse to the arbitrator may have constituted a direct contempt had they been made in court, to a judge, they cannot be the basis for the award in this case. First, the award is against the client who said nothing. Second, the remarks were made outside of the "immediate view and presence of the court". Although the arbitrator was a retired judge, he was acting in his capacity as an arbitrator when the remarks were made. We know of no statutory or jurisprudential rule of law which gives an arbitrator contempt authority. However, parties and their attorneys should treat a quasi judicial officer with respect and dignity.
C.R. Pittman further suggests that Pittman violated the trial judge's orders, and that he (the trial judge) had no other recourse in order to bring dignity and respect to the arbitrator in the performance of his job. Presumably, the orders referred to in that argument are the orders which compel arbitration. Constructive contempt can result from the "willful disobedience of any lawful ... order ... of the court". La. C.C. Pro. art. 225(2). Or, it can result from action "... intended to obstruct or interfere with the orderly administration of justice". La. C.C. Pro. art. 225(10). Although a court may enforce its order that parties arbitrate, the evidence simply does not support a finding of constructive contempt.
To find a person guilty of constructive contempt for violating a court's order, it must be shown that the violation was committed on purpose, was intentional and, without justifiable excuse. Reeves v. Westley Willie Thompson d/b/a Oasis Bar & Restaurant, et al., 95-0321 (La.App. 4th Cir. 12/11/96), 685 So.2d 575. Proceedings for contempt must be strictly construed, and the law does not favor extending their scope. Estate of Graham v. Levy, 93-0636, 93-0134 (La.App. 1st Cir. 4/8/94), 636 So.2d 287, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167.
The decision by Pittman and its attorneys to "walk out" of the arbitration proceedings was a tactical one based on their belief that their client's due process rights were being violated. Although that decision was unnecessary to preserve their rights (footnote 6, supra), nevertheless we do not find evidence in this record that establishes willful disobedience of the court's orders, or the intent to obstruct the administration of justice. The record does suggest, however, that the intended purpose of arbitration is far from being realized in this case.
*274 "The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action." Firmin v. Garber, 353 So.2d 975, 977 (La.1977). Arbitration must be agreed to by the parties, and when they do so they are presumed to accept the risk of procedural and substantive mistakes of either fact or law. In Re U.S. Turnkey Exploration, Inc. and PSI, Inc., 577 So.2d 1131 (La.App. 1st Cir.1991), writ den. 580 So.2d 676. Arbitrators have general discretion as to the mode of conducting the proceedings, absent a specific mode prescribed by statute or agreement. Id. at 1135. However, an arbitrator should be constantly vigilant of basic due process requirements, the first and foremost of which is the opportunity to present evidence and to be heard. Counsel should be afforded the opportunity to present their objections on the record. The arbitrator should respond, on the record, to those objections. The necessity of a transcript of all the proceedings is fundamental.
The four grounds which require a reviewing court to vacate an arbitrator's award are broad in scope and provide sufficient leeway to correct fundamental due process violations.[10] Suffice it to say that the statutory framework guarantees the litigants that justice will not be circumvented by an arbitrator's misconduct.
We are mindful of the concern expressed in this case about delaying tactics and the enforcement of arbitration agreements. While statutory law provides minimum relief in that regard, we will not liberalize well established contempt principles to put a party's "feet to the fire" under the circumstances of this case. A skilled arbitrator can accomplish those goals. More precise and stringent rules of procedure in the arbitration agreement can also make a difference. And, of course, legislation may be the ultimate answer. Arbitration is supposed to be a solution, not the source of continuous problems. Perceived or real problems that arise during arbitration should be noted on the record by the aggrieved party and preserved for appeal. Rushing to the courtroom and seeking sanctions on each occasion is not the answer. And, a trial judge should refuse to entertain all but the most egregious complaints which arise while arbitration is pending.
For the reasons assigned, the trial court judgment imposing a fine against Pittman is reversed. In all other respects, the judgment is affirmed.
REVERSED IN PART; AFFIRMED IN PART.
BYRNES, J., concurs.
NOTES
[1] Pittman's writ application was consolidated with this appeal. C.R. Pittman filed a motion to dismiss the appeal asserting it was a contempt judgment reviewable only by way of supervisory writs.
[2] During oral argument, counsel urged, as an alternative argument, that the trial judge should have considered the correctness of the arbitrator's actions before remanding.
[3] Pittman also applied for a writ which was consolidated with this appeal, thus procedurally the matter is before us either as a writ or an appeal.
[4] We also note that the imposition of Code of Civil Procedure articles 863 or 1420 sanctions has been recognized as final appealable judgments. See, Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d 506 (La.App. 4th Cir.1991); Fairchild v. Fairchild, 580 So.2d 513 (La.App. 4th Cir.1991). As a practical matter, a judgment for sanctions during the course of a civil proceeding is no different than a contempt judgment rendered during the same proceedings. Any distinction really makes no difference with respect to method of review by this court. We need not attempt to reconcile those differences in this case because in our opinion the judgment is subject to direct appeal.
[5] No. 92-11514 and No. 92-13106 were consolidated with the original suit.
[6] Article 222 lists six specific acts which constitute direct contempt, none of which are applicable in the instant case.
[7] The arbitrator, Judge Lorain F. Wingerter, was a retired judge formerly presiding over the 2nd City Court for the City of New Orleans. He is now deceased.
[8] Although not necessary for our decision in this appeal, we disagree with Pittman's arguments in that regard. R.S. 9:4210(C) clearly provides for relief when the arbitrator refused to hear evidence pertinent and material to the controversy.
[9] We pretermit any discussion about the amount of the fine. Suffice it to say that it could not exceed $500.00. La. R.S. 13:4611.
[10] La. R.S. 9:4210 provides:

In any of the following cases the court in and for the parish wherein the award as made shall issue an order vacating the award upon the application of any party to the arbitration.
A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.
D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.