**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 4, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.    2019AP1388** | Cir. Ct. No. 2016FA2102 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT IV** |

IN RE THE FINDING OF CONTEMPT IN:

KAEL DYLAN HANSON,

    PETITIONER-APPELLANT,

  V.

GLORIA JEAN BEACH,

    RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: SHELLEY J. GAYLORD, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

¶1     NASHOLD, J.[1]  Kael Hanson appeals an order of the circuit court finding him in contempt.  I affirm in part, reverse in part, and remand the case for further consideration of attorney fees.

## BACKGROUND

¶2     Kael Hanson and Gloria Beach were married in 1998.  They have five children together, four of whom were minors at the time this action commenced.  During their marriage, Beach and Hanson formed HK Physics LLC, which developed and sold products.

¶3     Hanson petitioned for divorce on November 16, 2016.  The parties entered into a partial marital settlement agreement[2] and submitted their unresolved financial issues to an arbitrator, who issued a decision and award on September 24, 2017 ("arbitration award") and an addendum to the award on November 18, 2017.  The arbitration award was filed on January 26, 2018.  After a final hearing before a circuit court commissioner on June 8, 2018, a judgment of divorce was issued on that same date, which incorporated the arbitration award, the arbitration addendum, and the partial marital settlement agreement.

¶4     On July 13, 2018, Beach filed a motion for remedial contempt.  In her affidavit supporting the motion, Beach alleged that Hanson had failed to comply with the September 24, 2017 arbitration award as incorporated into the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The parties also entered into a second partial marital settlement agreement that resolved issues pertaining to credit card debt and life insurance.  This second agreement is not relevant to this appeal.

judgment of divorce. She asserted that Hanson had failed to reimburse her for variable expenses, failed to pay her the HK Physics proceeds awarded to her under the arbitration award, and had not submitted a timely July 2018 support payment to her. She sought various remedial sanctions.

¶5 On September 7, 2018, Hanson filed a motion to dismiss Beach's motion for remedial contempt and sought contribution to attorney fees. Following a hearing on September 11, 2018, the court commissioner dismissed Beach's motion and ordered that Beach pay Hanson's attorney fees. Beach requested a de novo hearing, and the circuit court scheduled the hearing for October 5, 2018.

¶6 On October 1, 2018, Beach filed an amended motion for remedial contempt. Beach's amended motion alleged that Hanson had violated the judgment of divorce by failing to reimburse her for variable expenses and failing to provide information to her regarding the HK Physics contract or comply with the process for distributing the HK Physics proceeds. She further alleged that Hanson had diverted funds from the HK Physics proceeds for personal expenses and to pay the parties' 2015 tax obligations.

¶7 A hearing was held before the circuit court on October 5, 2018, which was to be continued on April 9, 2019. Prior to the April 9 hearing, Beach filed a supplemental motion for remedial contempt on February 27, 2019. Beach's supplemental motion alleged that Hanson had consistently violated a right of refusal provision in the partial marital settlement agreement as incorporated into the judgment of divorce.

¶8 On April 9 and April 15, 2019, the circuit court continued the hearing on the pending motions. The court issued a decision and order on May 6, 2019, finding Hanson in contempt. The court grouped its contempt determinations

3

into three broad categories. First, the court determined that Hanson had unreasonably and contemptuously withheld approval of variable expenses. Second, the court concluded that Hanson had withheld information and diverted funds related to HK Physics. Third, the court determined that Hanson had in multiple ways violated the provision granting Beach a right of refusal when Hanson was unable to exercise his placement time with the children. As a remedial sanction, the court ordered that Hanson pay Beach $30,000 in attorney fees. Hanson appeals the May 2019 order, challenging the contempt findings and the $30,000 award of attorney fees to Beach.

## DISCUSSION

¶9      Hanson disputes each of the circuit court's contempt determinations and its award of attorney fees to Beach. He also contends that the circuit court, like the court commissioner, should have granted his September 2018 motion to dismiss Beach's July 2018 contempt motion and awarded Hanson attorney fees. After first discussing the general standards governing review, I address each of Hanson's challenges to the court's contempt determinations.

¶10     Contempt of court is defined in pertinent part as intentional "disobedience, resistance or obstruction of the authority, process or order of a court." WIS. STAT. § 785.01(1)(b). Contempt may be punished either by a punitive sanction or a remedial sanction. Sec. 785.01(2) and (3). Punitive sanctions are "imposed to punish a past contempt of court for the purpose of upholding the authority of the court." Sec. 785.01(2). Remedial sanctions are civil and "imposed for the purpose of terminating a continuing contempt of court." Sec. 785.01(3). Only remedial contempt is at issue in this case.

4

¶11 A party aggrieved by another person's contempt may request remedial sanctions for the contempt, and the court may impose such sanctions. WIS. STAT. § 785.03(1). Remedial sanctions may include payment of a sum of a sum of money "sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court." WIS. STAT. § 785.04(1)(a). A court may award attorney fees and other litigation costs under subsection (1)(a). *Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 320 332 N.W.2d 821 (Ct. App. 1983).

¶12 Following a prima facie showing by the complainant of a violation of an order, alleged contemnors bear the burden of showing that their conduct was not contemptuous. *Noack v. Noack*, 149 Wis. 2d 567, 575, 439 N.W.2d 600 (Ct. App. 1989). The alleged contemnor must rebut the complainant's prima facie case to show that the conduct was not in violation of a court order or show that the violation of the order was not intentional. *See id.*

¶13 A circuit court's use of its contempt powers, its choice of remedial sanctions, and its award of attorney fees are reviewed to determine whether the court properly exercised its discretion. *Benn v. Benn*, 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App. 1999); *see also* WIS. STAT. §§ 785.02, 785.04(1). A court has properly exercised its discretion when it has logically interpreted the facts, applied a proper legal standard, and reached a reasonable conclusion using a demonstrated rational process. *See Benn,* 230 Wis. 2d at 308. Contempt determinations are reviewed with deference unless the determination involves interpretation of a statute, which is reviewed de novo. *See Frisch v. Henrichs*, 2007 WI 102, ¶29, 304 Wis. 2d 1, 736 N.W.2d 85. "The findings of fact in a civil contempt proceeding are conclusive unless contrary to the great weight and clear preponderance of the evidence." *Town of Seymour*, 112 Wis. 2d at 318.

## *I. Variable Expenses Incurred Prior to the June 8, 2018 Incorporation of the Arbitration Award into the Divorce Judgment*

¶14    The arbitration award was granted on September 24, 2017, filed with the circuit court on January 26, 2018, and incorporated into the judgment of divorce on June 8, 2018.  The arbitration award provides, "Variable expenses ... shall be shared equally by the parties and reconciled monthly.  Whoever owes the other parent money each month will make payment within 30 days of the reconciliation."[3]  On numerous occasions, both before and after the June 8, 2018 judgment of divorce, Beach requested reimbursement from Hanson for variable expenses she claimed were incurred between October 1, 2017 and April 29, 2018.  Hanson did not respond to Beach's requests until June 26, 2018, when he indicated that Beach actually owed him reimbursement for variable expenses.  On July 13, 2018, Beach filed a motion for contempt, which the court granted.

¶15    Hanson argues that the circuit court was without authority to find him in contempt for failing to pay variable expenses because the expenses at issue were incurred prior to the court's June 8, 2018 divorce judgment incorporating the arbitration award.  He argues that Wisconsin's contempt of court statute requires a violation of a court order and that an arbitrator is not a court.  *See* WIS. STAT. § 785.01(1)(b) (defining "contempt of court" as the "intentional … disobedience,

---

[3] Neither party argued in the circuit court, or argues on appeal, that, to be eligible for reimbursement, a party was required to request reimbursement within thirty days of incurring the expense.  In fact, at the de novo hearing, the parties indicated that they understood the thirty days to refer to the time limit to provide reimbursement once the request was made.  The circuit court found that the parties' course of conduct clearly showed an agreement that there was no time limit for requesting reimbursement for variable expenses and that the parties "intended to look backwards (i.e. prior to the final hearing) in claiming expenses."  In support, the court noted that each party requested reimbursement for variable expenses that were incurred prior to the June 8, 2018 judgment of divorce.

resistance or obstruction of the authority, process or order of a court"). He states that "[t]his appeal will determine the enforceability of an unconfirmed arbitration award through contempt."

¶16 However, as Beach points out, this case does not involve enforcement of an unconfirmed arbitration award. Beach's July 13, 2018 motion for contempt was filed—and the circuit court's contempt order was issued—*after* the June 8, 2018 judgment of divorce incorporating the arbitration award. Thus, the premise on which Hanson relies—that this case involves the enforceability of an unconfirmed arbitration award—is unfounded.

¶17 Similarly unfounded is Hanson's reliance on authority from other jurisdictions which, unlike here, involve arbitration awards that were *never* confirmed. *See In re Marriage of Leverett*, 318 P.3d 31, ¶¶9, 11 (2012) ("Because an arbitrator is not included in [the] definition [of "court"], and an arbitrator's award is not an order of the court, a person cannot be held in contempt of court for violating an unconfirmed award of an arbitrator."); *Pittman Constr. Co. v. Pittman*, 96-1079 (La. App. 4 Cir. 3/12/97); 691 So. 2d 268, 270, 272-73 (reversing a contempt finding based on attorney's heated remarks made to an arbitrator); *In re: Southwest Ranching Inc.*, 2017 WL 4274309, No. 01-23337, slip op. at 3 (Bankr. S.D. Tex. Sept. 22, 2017) (concluding that an arbitration award can only dissolve an injunction if the award was confirmed by a court).

¶18 These cases are plainly inapposite because, as stated, in this case a court order was in effect when Beach filed her contempt motion and when the circuit court found Hanson in contempt. Hanson cites no authority, controlling or otherwise, addressing the situation here—a contempt motion that was brought *following* a court's confirmation of an arbitration award—nor does he provide any

authority for his position that a contempt motion brought pursuant to a confirmed arbitration award may only address amounts that were incurred *after* confirmation of the award.

¶19     Hanson also does not explain how the issue of when the expenses were incurred bears on the issue of contempt. Here, the contempt alleged was not the incurring of expenses; rather, it was Hanson's failure to comply with the procedures governing variable expenses that were set forth in the arbitration award. Those procedures are incorporated into the circuit court's June 8, 2018 judgment of divorce, after which, according to Beach and as ultimately concluded by the court, Hanson continued not to comply with them. This resulted in Beach's July 13, 2018 contempt motion and in the court's May 6, 2019 decision finding Hanson in contempt. Because Hanson offers no cogent rationale or authority that supports his position, he has failed to provide any basis for reversing the court's determination on this point.[4] *See, e.g.*, **Young v. Young**, 124 Wis. 2d 306, 312, 369 N.W.2d 178 (Ct. App. 1985) (we refuse to consider an argument without legal authority specifically supporting the relevant propositions).

---

[4] Hanson also argues that if this court concludes that he could be in contempt for not reimbursing Beach for variable expenses Beach incurred before the arbitration award was confirmed by the circuit court, then this court "will need to consider the specific expenses that [Beach] claimed and compare them to the expenses [Hanson] claimed to determine whether there was an actual amount owed by either one of them." Hanson argues that the circuit court did not conduct this calculation and instead directed the parties to reconcile their expenses. Hansen is referring to the court's statement that "Mr. Hanson's expenses will offset what he owes [Beach] to the extent Ms. Beach agreed to them per her testimony" and that the parties must "reconcile this on their own" by a date certain. However, implicit in the court's statements and its contempt determination is a finding that the variable expenses Beach incurred exceed those that Hanson incurred. Moreover, it is not up to this court on appeal to conduct the types of calculations that Hanson urges this court to undertake.

## *II. Withholding Reimbursement of Variable Expenses over $200*

¶20    The arbitration award provides that variable expenses "in excess of $200 must be approved in advance by the other parent." Hanson argues that the circuit court erred when it found that his refusal to reimburse Beach for individual variable expenses greater than $200 was unreasonable and contemptuous. Specifically, the court determined that Hanson had unreasonably and contemptuously withheld approval of $1,454.20 in airfare for their adult son, $650 in fees associated with a summer day camp ("LandRec") and $621.85 in summer swimming pool memberships for the minor children. The airfare issue is discussed in the next section because it requires analysis of a separate provision of the arbitration award, but the LandRec and swimming pool expenses are discussed below.

¶21    Despite the language of the arbitration award, the circuit court ruled that "there is an implied requirement of reasonableness in withholding approval for the expenses over $200" and determined that Hanson's refusal to reimburse for these expenses was unreasonable and contemptuous. In support of its conclusion, the court stated: "Withholding approval for routine expenses previously paid during the marriage or routinely expected to be paid is unreasonable" and that this was "especially so given that Mr. Hanson used some of the services that Ms. Beach funded" and spent time with the adult son during the son's visit.

¶22    As applied in these circumstances, the contempt statute requires intentional disobedience of a court order. *See* WIS. STAT. § 785.01(1)(b). Here, the court's judgment of divorce that incorporated the arbitration award expressly required pre-approval for expenses over $200. Because it is undisputed that Beach incurred the LandRec and pool expenses without Hanson's approval, Hanson

9

cannot be found in contempt for failing to reimburse Beach for these expenses. Beach's arguments to the contrary are unpersuasive.

¶23 Beach argues that the circuit court had authority to sanction Hanson with contempt for his "unreasonable" behavior, pursuant to *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). In *McComb*, the United States Supreme Court determined that civil contempt could be found even when the conduct at issue had not been specifically enjoined. *McComb*, 336 U.S. at 192. However, *McComb* is inapplicable here because Hanson was explicitly authorized by the arbitration award to withhold approval for variable expenses over $200, whereas no similar provision was present in *McComb*. *See id.* at 191-92, 194.

¶24 Because Hanson was specifically authorized without limitation to withhold approval for expenses above $200, he cannot be said to have intentionally disobeyed an order of the court. *See* WIS. STAT. § 785.01(1)(b). The circuit court therefore erred in finding Hanson in contempt for failing to reimburse Beach for LandRec and pool expenses.

### III. Withholding Reimbursement for the Adult Son's Airfare

¶25 Hanson argues that it was error for the court to find him in contempt for refusing to reimburse Beach for a $1,409 airfare expense for the parties' twenty-five-year-old son to fly home for Christmas in 2017 from Belgium, where he had been studying abroad.

¶26 The arbitration award provides that "[t]he parties agreed to equally share [their son's] college expenses for the 2017-18 school year." Unlike other expenses over $200, the provision for college expenses was not subject to a pre-approval requirement. Despite this provision requiring the sharing of college

expenses, Hanson argues that contempt was improper because, in Beach's July 2018 contempt motion, Beach listed only the variable-expenses provision of the arbitration award, not the college-expenses provision, and the circuit court likewise considered the airfare as a variable expense in finding Hansen in contempt.[5]  Hanson contends that the airfare is not a "variable expense" because variable expenses only include expenses for children, not adults.  *See* WIS. ADMIN. CODE § DCF 150.02(29) (through Feb. 2021) (defining variable expenses as "[t]he reasonable costs above basic support costs incurred by or on behalf of a child").

¶27    Although Beach's July 2018 contempt motion did not refer specifically to "airfare," Beach's affidavit attached to her motion stated that "[Hanson] has yet to address … the payment of expenses for our adult son." Moreover, it is undisputed that Beach had requested reimbursement from Hanson for the son's airfare and that Hanson did not provide approval or reimbursement. Thus, the record shows that Hanson had notice that Beach sought reimbursement for this expense.  I reject Hanson's argument that the contempt motion's failure to refer specifically to "airfare" or the college-expenses provision defeats the court's finding of contempt.

¶28    I also reject Hanson's argument that the contempt determination was improper because both Beach and the circuit court included the airfare in discussions pertaining to variable expenses.  Even if the airfare is not a variable expense, Beach persuasively argues that the expense is subject to reimbursement under the college-expenses provision of the arbitration award, which requires the

---

[5] The circuit court made no finding with respect to whether the airfare was a variable expense or a college expense, but the court's decision does discuss airfare, along with LandRec and pool fees, under its "VARIABLE EXPENSES" heading.

parties "to equally share [their son's] college expenses for the 2017-18 school year." It is undisputed that, as found by the circuit court, the parties' son was attending the university in Belgium and was returning home for Christmas, as he had done in previous years. Hanson makes no argument that his son's 2017 airfare is not a "college expense" under the arbitration award; he only argues that it is not a variable expense and that it was improperly labeled as such by Beach and the circuit court. In light of the college-expenses provision of the arbitration award, Hanson's arguments are insufficient to show that the circuit court erred in finding him in contempt for refusing to reimburse Beach for his share of the airfare expense.

### IV. Withholding Information Regarding HK Physics

¶29    The September 2017 arbitration award addresses how proceeds related to a then-pending HK Physics contract would be distributed:

> The money received under the current [2017] HK [Physics] contract (approximately $350,000) should be distributed as follows: (1) all costs of production shall be deducted, (2) any income taxes due shall be deducted, (3) any reasonable amounts-not to exceed $35,000-for website update and marketing should be deducted, (4) [Beach] and [Hanson] should each then receive $57,109 but [Hanson]'s amount should go to [Beach] to equalize the property division[,] and (5) the parties should split equally any remaining funds.

Hanson represented during the September 2017 arbitration proceedings that he expected the income from the contract to be "earned in the next several months." However, Beach was not made aware until the June 8, 2018 final divorce hearing that substantial amounts had been paid to Hanson on the HK Physics contract. Hanson's counsel represented to the court commissioner that not all payments had yet been received on the contract and that the net contract proceeds had yet to be

calculated by deducting taxes, production costs and website development costs from the total proceeds received, pursuant to the arbitration award's process described above. Hanson also testified that he did not know what the final payout amount on the HK Physics contract would be, in part because the 2018 taxes were not completed and would need to be deducted from the final payout amount. The court commissioner asked the parties if they wished to delay finalizing the divorce to determine the calculation on the final payout amount. Hanson's attorney suggested that the parties proceed with the divorce because the arbitration award included the procedure set forth above for determining the amount due to Beach, which Hanson would follow. After conferring with counsel, Beach agreed to finalize the divorce.

¶30 Approximately three months later, in a September 2018 motion, Hanson continued to allege that final calculations could not be completed "until all costs, income taxes and marketing costs, were determined," and that once the deductions outlined in the arbitration award were accounted for, "there could be a negative number," which would "mean that [Beach] could end up paying [Hanson] some funds so that the proceeds are ultimately equalized." Hanson also asserted that "[b]ecause some of the funds did not come in until 2018, they will be addressed in 2018 income taxes," which "won't be complete until spring of 2019." Hansen did not provide Beach with the payout from the HK Physics contract until February 15, 2019.

¶31 As stated, Beach brought an amended motion for remedial contempt in October 2018. In her supporting affidavit, Beach alleged, among other things, that Hanson had not abided by the process for distributing the HK Physics contract proceeds set forth in the arbitration award, as described above. Specifically, Beach alleged that Hanson was dilatory in filing the 2017 HK Physics taxes and

was "not providing [Beach] any information about the 2017 or 2018 HK Physics income or expenses." She further alleged that, contrary to the arbitration award, Hanson improperly maintained that the parties must "wait until the 2018 HK Physics taxes are filed to determine how much [Beach is] to be paid from the HK Physics proceeds." As remedial sanctions, Beach requested an order requiring Hanson to complete the parties' 2017 taxes by October 15, 2018, and an order requiring Hanson to distribute to Beach the remainder of the money owed to her pursuant to the arbitration award within one week of the completion of the parties' 2017 taxes.

¶32 Following a three-day hearing and the circuit court's review of the June 8, 2018 hearing transcript, the court held Hanson in contempt for withholding information related to the HK Physics contract that Beach needed to calculate her payout from the contract. Hanson challenges the court's determination. For the reasons set forth below, Hanson has not shown that the court erred in finding Hanson in contempt for withholding information needed to determine Beach's payout under the arbitration award.

¶33 In its contempt order, the circuit court found that Hanson "obfuscated" the fact that the 2017 HK Physics contract "had ended months before" the June 8, 2018 final hearing and also found that Hansen "did not seem to inform his attorney of that fact." The court found that Hanson's counsel was under the impression at the June 8 hearing that the final HK Physics contract payments had not yet been made, informing the court commissioner, "So we're waiting for the contract to be paid in full and the taxes to be figured out so we

know how much is left that goes to [Beach]."[6]  The court also found that Hanson had not been forthcoming in providing information that Beach needed to determine the status of the payout amount on the HK Physics contract:

> Prior to the divorce in June of 2018, emails in Exhibit 31 make clear what relevant information Ms. Beach could and could not access and what she needed from Mr. Hanson.  She could access 2017 data and was able to get some 2018 data, but not enough to verify the final payout on the [2017] contract for HK [Physics].  Not only was the final pay out information withheld, but substantial information about cash Mr. Hanson had on hand to provide the expected initial pay out was withheld.…  [T]here [was] no reason to wait for the full 2018 taxes to be calculated for each party….  This is rather obvious and Mr. Hanson ... should have known this.  Thus, this comprises contemptuous conduct in withholding the information.…  Mr. Hanson insisting the calculation could not be made is simply wrong.

The circuit court found that obtaining the information needed from Hanson was like "pulling teeth" and that Hanson's withholding of information "ran up significant attorney fees" for Beach when her attorney had to obtain the necessary information through discovery and other methods.

¶34     Hanson does not dispute the circuit court's findings of fact, nor does he dispute Beach's contentions that, with the exception of the 2017 taxes, expenses related to the contract had been paid at the time of the June 8 hearing, and that he had the information needed to calculate the amount he owned Beach. Instead, Hanson argues that he cannot be held in contempt for not providing

---

[6] Beach's counsel likewise indicated at various points that he had not been provided with pertinent information, stating, "[W]e don't have the final numbers for HK Physics to know … whether what they're representing is accurate," and "I don't have the information needed to corroborate their numbers, again this is the first we're hearing of this issue."

information when there was no court order requiring him to do so and when Beach chose to proceed with the final hearing knowing she had unanswered questions.

¶35 These arguments are unpersuasive. Regarding Hanson's contention that no court order required him to provide the information, I note that the arbitration award, incorporated into the judgment of divorce, specifically awarded Hanson certain proceeds of the HK Physics contract and provided the methodology for the parties to determine the amount she would be paid. Withholding information necessary to ensure compliance with that aspect of the judgment of divorce was properly deemed contempt. *See* WIS. STAT. § 785.01(1)(b) (defining "contempt of court" as the "intentional … [d]isobedience, resistance or obstruction of the authority, process or order of a court").

¶36 With respect to his second argument, Hanson fails to explain why a finding of contempt for withholding information is precluded by Beach's agreement to proceed with the judgment of divorce on June 8, particularly given that Beach made that decision without the benefit of pertinent information that Hanson possessed at that time but did not disclose. Thus, Hanson's argument is rejected as undeveloped. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

¶37 In sum, I conclude that Hanson has failed to show that the circuit court erred in finding him in contempt for withholding information needed to determine Beach's payout as provided for by the arbitration award and judgment of divorce.

## V. Diversion of HK Funds

¶38    In Beach's October 2018 affidavit supporting her amended motion for remedial contempt, she argued that Hanson had wrongfully withdrawn $30,000 from the HK Physics account.  The circuit court agreed that Hanson's use of the funds was improper and found him in contempt for having diverted funds for personal use and for 2015 taxes.  The court found that this was "a clear attempt to circumvent the final judgment" and "a violation of the order."

¶39    Hanson argues that the court erred in holding him in contempt for using HK Physics profits for personal use and for paying the parties' joint tax liability.  He points out that he was awarded the existing $59,236 in an HK Physics checking account pursuant to the arbitration award's division of marital property, and that the circuit court ignored this fact in finding him in contempt for diverting funds from HK Physics.  Because the record supports Hanson's contention that he was awarded the $59,236 in the checking account and Beach does not refute this point, I determine that the court's contempt finding on this ground constituted an erroneous exercise of discretion.  *See Hess v. Fernandez*, 2005 WI 19, ¶12, 278 Wis. 2d 283, 692 N.W.2d 655 (a circuit court misuses its discretion if the facts do not support the court's decision).

¶40    In dividing marital assets, the arbitration award clearly awards Hanson $59,236 that was in an HK Physics checking account at the time of the arbitration award, and states that future HK Physics income would be treated separately.  The arbitration award sets forth the process, described in the preceding section, for dividing that future income between the parties.  In contrast to the existing $59,236 awarded to Hanson, the arbitration award stated that the future

HK Physics proceeds to be divided were expected to "be earned in the next several months."

¶41    Beach repeatedly characterizes the $59,236 at issue as funds that were ordered to be divided with her.  However, she cites no information in the record to support these assertions.  Moreover, not only does the arbitration award clearly state that this amount was awarded to Hanson but both Beach and her attorney agreed at the de novo hearing that Hanson was entitled to this initial amount of money in the account.  Indeed, Beach's counsel suggested that the issue was actually that Hanson's use of this money was proof that he had funds available to pay Beach and had no excuse for not paying Beach her share of the HK Physics proceeds.  But any such claim is not the same as "diverting" funds, which was the basis of the contempt finding here.

¶42    Because Hanson was awarded the $59,236 in the HK Physics checking account, the court erred by holding him in contempt for using those funds.

## VI.  Right of First Refusal

¶43    The parties' January 2018 settlement agreement, incorporated into the divorce judgment, contains a provision granting the parties a mutual right of first refusal (ROFR) in the event that one party is unable to exercise placement time with the children.  Hanson argues that the circuit court erred when it found him in contempt for failing to abide by the ROFR provision.

¶44    The ROFR provision contains five operative clauses.  It provides:

> The parents shall exercise a right of first refusal in which a parent with physical placement shall notify the other parent and offer his/her placement time as follows:

1. If the placement parent is unable to exercise placement for a period of 4 hours or more, he or she shall offer the time to the other parent before contacting a third person to provide care for the children. This provision is not intended to eliminate opportunities for the children to spend overnight time with extended family.

2. The parties share an intent that [the older children] should not be used to babysit the younger children for more than 2 hours at a time (during the younger children's waking hours) more than 1 time per week. The non-placement parent shall be offered the placement time to avoid [the older children] having to provide this care.

3. The parties share an intent that neither shall have a third party provide care for the children on a regular basis without the non-placement parent first being offered the placement time.

4. If a child is ill and the placement parent is not available to provide care, the non-placement parent shall be contacted and offered opportunity to care for the child.

5. A placement parent shall notify the other parent within a reasonable amount of time of learning that a right of first refusal situation will occur. If a non-placement parent agrees to care for the children during the other parent's placement time, that agreement shall be binding.

¶45 The circuit court determined that Hanson violated the ROFR provision in three ways: by having his partner Teresa Madden pick up the children from school on his care days, by having Madden care for the children on a routine basis, and by allowing his older children to provide more care to the younger children than allowed by the parties' agreement.

*a. School transportation*

¶46 The circuit court determined that Madden's driving the children home from school "at least a few times each week" constituted a violation of the ROFR provision's third clause, which, as stated, provides: "The parties share an intent that neither shall have a third party provide care for the children on a regular

19

basis without the non-placement parent first being offered the placement time." The court determined that the approximately fifteen-minute drive home at least a few times each week constituted "provid[ing] care" under that clause. In support of this interpretation, the court relied on the following statement in the background section of the arbitration award: "While the parties have joint custody and approximately equal placement[,] [Beach] has the ability to fill in and cover during [Hanson's] placement times when he is unavailable due to work and travel requirements." From this statement in the background section, the court concluded that the arbitration award "specifically says [Beach] is to fill-in when work takes [Hanson] away from ordinary obligations," and that "[t]his includes picking up the children from school because he is at work."

¶47 Hanson acknowledges his testimony that he asked Madden to transport the children home from school on some days but also points to his testimony that, at most, the children were alone with Madden for ten to fifteen minutes. Hanson argues that Madden's transportation did not constitute a ROFR violation.

¶48 I conclude that the circuit court erred in determining that Madden's transportation of the children constitutes the type of "care" that would trigger a requirement under the ROFR provision and that the arbitrator's statements in the background section of the arbitration award do not support a contrary conclusion. To conclude that neither parent may leave the child with another person for fifteen minutes a few times per week without first offering a right of first refusal to the other parent is an unreasonable interpretation of the ROFR provision. Moreover, as Hanson notes, the court's conclusion is also undercut by the fact that, by her own testimony, Beach allowed their daughters to ride the bus home after school on her placement days without first offering Hanson a right of first refusal. Thus, the

court erred in determining that Hansen was in contempt for violating the ROFR provision as a result of Madden's transportation of the children.

*b. At-home care and babysitting*

¶49    Hanson challenges the circuit court's determination that he violated the ROFR provision by having the parties' oldest daughter watch the younger children for more than two hours or having Madden provide care for them. Hanson argues that the court erred in finding him in contempt on this basis because the court's determination was based "solely" on Beach's hearsay testimony regarding what the children allegedly told her.  At the hearing, when Hanson's counsel objected on hearsay grounds to Beach's testimony regarding what the children said to her, the court asked, "Do you want to call the kids in?" but did not find that any exception to the rule against hearsay applied.  Beach does not dispute that the testimony at issue was inadmissible hearsay.  And Hanson is correct that the court relied, in part, on this hearsay testimony in finding Hanson in contempt:

> [m]uch of the [ROFR] dispute comes from Ms. Beach getting reports from the children and, naturally, believing them.  Mr. Hanson's response seems to be of little use: don't believe them when it's not true…. [I]t is reasonable for Ms. Beach to believe her children given the absence of other timely and somewhat verifiable information and some of Mr. Hanson's other conduct, as stated in this decision.

¶50    However, Hanson is incorrect that the circuit court relied "solely" on this hearsay evidence.  As Hanson acknowledges, the court also relied on Beach's testimony that, based on her prior experience while married to Hanson, she did not believe that Madden was only with the children for fifteen minutes as Hanson claimed because, while they were married, he did not return home until closer to 6:00 p.m., which would leave the children in either Madden's or the older

daughter's care for hours. In addition, the court was aware that Madden picked up the children from school on a regular basis, which also supports an inference that Hanson was at work during the after-school hours. The court also referenced email exchanges between the parties, in which Beach expressed concern over how many hours the oldest daughter and Madden were providing care for the younger children and whether Hanson had any plans for the children for the summer.

¶51 Significantly, the court also based its determination on its finding that Hanson lacked credibility, noting as an example that, when answering Beach's discovery requests, Hanson claimed that he did not keep time sheets or documents showing his work hours yet produced leave sheets for the hearing in an attempt to show that he was not working and was instead caring for the children during the disputed times. A circuit court's credibility determinations "'will not be questioned unless based upon caprice, an abuse of discretion, or an error of law.'" *Jacobson v. American Tool Cos., Inc.*, 222 Wis. 2d 384, 390, 588 N.W.2d 67 (Ct. App. 1998) (quoted source omitted); *see also* *L.M.S. v. S.L.S.*, 105 Wis. 2d 118, 120, 312 N.W.2d 853 (1981) ("[W]here there is conflicting testimony, the trial court is the ultimate arbiter of the witness's credibility.").

¶52 I conclude that, even without the hearsay evidence at issue, the court had sufficient evidence to support its conclusion that Hanson violated the ROFR provision by having the parties' older daughter or Madden care for the younger children. Accordingly, Hanson has not shown that the contempt finding on that basis was in error.

*c. Timeliness of ROFR notification*

¶53 The circuit court's contempt determinations related to the ROFR provision also addressed an out-of-country trip Hanson took from August 27 until

September 6, 2018. Hanson notified Beach of the trip and offered her the ROFR opportunity on August 13, 2018, the same date he booked the ticket. The court found that this was contemptuous, noting that Hanson provided his attorney notice of the trip on July 16, 2018 but waited another month to provide notice to Beach.

¶54 Hanson argues that the circuit court erred in finding him in contempt for not timely notifying Beach of a ROFR opportunity. He argues that he notified Beach as soon as he committed to the trip in question, and contends that the court disregarded the ROFR provision's language requiring notice "within a reasonable amount of learning that a right of first refusal situation *will* occur." (Emphasis added.) He points to his testimony at the hearing that he did not believe prior to August 13 that there was a reasonable chance of him going on the end-of-August trip, and argues that he was unsure whether he was going to go on the trip until August 13, the day he purchased the tickets and notified Beach. Thus, he contends, the court's contempt finding on this point was in error.

¶55 The circuit court addressed Hanson's argument, stating: "Mr. Hanson notified his attorney weeks before he notified [Beach]. His 'excuse' is that he wasn't 'certain' he would go so the [ROFR provision's] 'will occur' language does not apply. This is not tenable. He was sure enough to tell his attorney about his availability, but not sure enough to tell Ms. Beach. This doesn't fly and is contemptuous." I construe the court's statement as a credibility determination: the court did not find credible Hanson's testimony that he did not know he was going abroad until he booked his ticket two weeks before his trip. The court was not required to credit Hanson's testimony. As previously stated, "the trial [court] is the ultimate arbiter of the witness's credibility," and I will not disturb the court's credibility determination. *See L.M.S.*, 105 Wis. 2d at 120.

¶56    Based on the foregoing, Hanson has not shown that the court's contempt finding based on the August 2018 trip was in error.

*VII.  Motion to Dismiss and Award of Attorney Fees to Hanson*

¶57    The court commissioner dismissed Hanson's initial, July 13, 2018, motion for remedial contempt and, concluding that Beach's motion was frivolous, awarded attorney fees to Hanson.  However, the circuit court, on de novo review and presented with Beach's amended and supplemental motions for remedial contempt, found Hanson in contempt on some of Beach's allegations, while also rejecting some of Beach's contempt allegations.  Included in the circuit court's contempt findings was Beach's allegation raised in her initial contempt motion that Hanson contemptuously failed to reimburse her for a number of variable expenses, a determination which, on appeal, has been affirmed in part and reversed in part.  Also, regarding Beach's allegation in her original motion that Hanson was in contempt for failure to pay Beach her share of the HK Physics proceeds as required, the circuit court did not find contempt for failure to pay, but did find contempt for withholding information pertinent to that payment.

¶58    The circuit court also rejected Beach's allegation in her July 13 motion that Hanson should be found in contempt for making late child support and maintenance payments; however, the court determined that the allegation was not frivolous.  In fact, the court determined that none of Beach's motions for contempt were frivolous, stating, "It was not frivolous to bring these motions for contempt."

¶59    Focusing only on Beach's July 13, 2018 motion for remedial contempt, Hanson argues that the circuit court erred in denying his September 7, 2018 motion to dismiss Beach's motion and likewise erred in denying him attorney fees for having to respond to Beach's "frivolous" motion.  Although

24

Hanson acknowledges that Beach amended her contempt motion prior to the de novo hearing, he does not discuss this factor in any detail, simply stating that the circuit court "ignored the fees that [Hanson] incurred in having to respond to the initial baseless filing."

¶60    Hanson contends his motion should have been granted and attorney fees awarded to him, based largely on arguments discussed above, in particular, that he was not in violation of any court order and that computations had not yet been completed to determine the amount of HK Physics proceeds that were to be shared.  In addition, he argues that some of Beach's requested forms of relief amounted to an improper request to modify the judgment of divorce and were not reasonably related to the contempt she claimed.  Therefore, he contends, Beach's July 13, 2018 motion for remedial contempt was frivolous and the circuit court should have dismissed Beach's motion and granted attorney fees in Hanson's favor, as did the court commissioner.

¶61    It is unclear from Hanson's cursory arguments whether they presuppose that Hanson has prevailed on appeal regarding his challenges to Beach's July 13, 2018 contempt motion.  Certainly, the circuit court, on de novo review, was not required to grant Hanson's September 2018 motion to dismiss when the court determined that most of Beach's July 13 contempt allegations were meritorious and some of these determinations were upheld on appeal.  Likewise, attorney fees may not be granted to Hanson with respect to Beach's meritorious arguments.  However, to the extent Hanson is arguing that, even if some of Beach's claims are determined to be meritorious, he may nevertheless be entitled to attorney fees based on Beach's "frivolous" claim that he made late payments of maintenance and child support, Hanson has not developed that argument, nor has he developed an argument that the court erroneously exercised its discretion in

determining that this contempt allegation was not frivolous. *See **Jandrt v. Jerome Foods, Inc.**,* 227 Wis. 2d 531, 549, 597 N.W.2d 744 (1999) (a circuit court's determination of frivolousness is reviewed deferentially on appeal).

¶62 Finally, Hanson fails to discuss how Beach's October 1, 2018 amended contempt motion or her February 27, 2019 supplemental contempt motion factors into the analysis. Hanson does not argue that the court erred in allowing Beach to amend her motion, and thus the court was tasked with considering the updated motions and not the original motion. Because Hanson has failed to develop his arguments that he is entitled to dismissal of Beach's original contempt motion and entitled to attorney fees for responding to that motion, I do not address them further. *See **Pettit**,* 171 Wis. 2d at 646.

### VIII. *Award of Attorney Fees to Beach*

¶63 Hanson challenges the circuit court's award of $30,000 in attorney fees to Beach. Because I have reversed some of the circuit court's findings of contempt against Hanson while upholding others, I also reverse the circuit court's award of attorney fees, and remand to the circuit court for a determination of

whether attorney fees should be awarded and, if so, how much should be awarded.[7]

## CONCLUSION

¶64 For the reasons set forth above, I affirm in part, reverse in part, and remand to the circuit court for a determination whether attorney fees should be awarded, and, if so, how much should be awarded.

¶65 No costs are awarded to either party. *See* WIS. STAT. § 809.25.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] Although it may be unnecessary, I address Hanson's main argument with respect to the circuit court's award of attorney fees, in the event this issue arises again on remand. Hanson contends that the court based the award of $30,000 in attorney fees in part on his ability to pay, and asserts that this was error. Specifically, Hanson refers to the circuit court's comments that Hanson was "capable of additional earnings" and had previously spent $8,000 on his flying hobby. Although the court clearly engaged in an analysis of Hanson's ability to pay $30,000 of Beach's attorney fees, I disagree that the court's comments indicate that the court used Hanson's ability to pay as a factor in calculating the amount of attorney fees to award. Instead, the court's decision as a whole indicates that it awarded attorney fees based on its contempt findings and that the court used Hanson's earnings capacity only to determine whether he could carry the burden of a significant attorney fee award.

27